JUSTICE FERNANDEZ-VINA delivered the opinion of the Court.
**118 In this case the Court is tasked with determining whether an electrical inspector is entitled to qualified immunity under N.J.S.A. 59:3-3, or absolute immunity under N.J.S.A. 59:3-5 or -7, pursuant to the Tort Claims Act (TCA). The case stems from a tragic fire in the City of Paterson (City) on June 30, 2010. The fire consumed a multi-unit home owned by Florence Brown, taking the lives of four residents and injuring several others as they made **119 their escape. Seven lawsuits were filed by various plaintiffs involved in the fire and those representing the deceased against a number of private and public entities. During the lengthy proceedings below, the question arose whether the City and its electrical inspector, Robert Bierals-alleged by the plaintiffs to be at least partially at fault for the fire-are entitled to qualified or absolute immunity under the TCA, N.J.S.A. 59:3-3, -5, or -7. *705 During discovery, Bierals and the City moved for summary judgment on immunity grounds. The trial court ruled that Bierals and the City were entitled only to qualified immunity and denied their motions. After the close of discovery, Bierals and the City again moved for summary judgment. A different judge granted the motion, ruling that they were entitled to absolute immunity. On plaintiffs' motion for reconsideration pursuant to Rule 4:49-2, however, the judge denied summary judgment, finding that Bierals and the City were entitled only to qualified immunity.
The Appellate Division granted the City and Bierals leave to appeal and affirmed the denial of summary judgment. The panel held that Bierals' actions could constitute enforcement of the law and that a factual dispute remained as to whether he acted in good faith. The case was remanded to the trial court for further proceedings.
We granted leave to appeal. Because the critical causative conduct in this case was a failure to enforce the law, Bierals is entitled to absolute immunity. We therefore reverse the decision of the Appellate Division and enter judgment in favor of Bierals and the City.
I.
A.
Because this appeal arises out of defendants' motion for summary judgment, the relevant facts, derived from the record below, are construed in the light most favorable to the plaintiffs.
**120 On January 9, 2010, the Paterson Fire Department responded to Brown's multi-unit home to investigate smoke coming from a boiler. A City fire inspector discovered improper wiring in the electrical panels in the basement and notified the City's electrical department that the issue required further inspection.
On January 11, 2010, Bierals, an electrical inspector employed by the City, inspected the electrical panels and determined that the wiring did not comply with the building code. Bierals photographed the wiring and told Brown that the wiring was extremely dangerous.
The City, through Bierals, issued Brown a "Notice of Violation and Order to Terminate" on January 12, 2010. Brown did not respond. On April 23, 2010, the City sent a "Notice and Order of Penalty" to Brown, citing specific violations of the Uniform Construction Code Act and various regulations.
Bierals returned to the Brown home on May 20, 2010 to re-inspect the wiring. Upon his arrival, Brown told him that she had not altered or repaired the wiring. Bierals told Brown to hire an electrician and have the wiring repaired within two weeks. He directed Brown to notify him when the electrician arrived. In his report, Bierals indicated that he had re-inspected the wiring. He had not actually conducted a second inspection; instead, he relied on Brown's representation that the issue had not been corrected.
After his visit to the home on May 20, 2010, Bierals contacted Francine Ragucci, an employee of the City's Community Improvements Department. Bierals testified that he showed Ragucci photographs of the wiring and told her something had to be done to remedy the problem. Ragucci said that she would speak with Sal Ianelli, another City official, and inform Bierals about the conversation. Bierals did not hear from Ragucci.
According to Bierals, if a code violation constitutes an imminent hazard, the City may terminate electrical service to the home. Bierals testified that department *706 policy required him to notify his direct supervisor, Alfonso Del Carmen, of an imminent hazard and **121 that Del Carmen would ultimately determine whether to shut off the power.
Bierals did not contact Del Carmen about the issue at the Brown home because of a conflict between the two that had occurred on a previous occasion when Bierals recommended a shut-off. According to Bierals, Del Carmen had accused him of recommending a power shut-off to generate work for an electrician friend. After the incident, Bierals decided he would no longer go through Del Carmen to obtain a shut-off. Instead, he had contacted Ragucci because he thought the situation at Brown's property required immediate action.
On June 30, 2010, the faulty wiring caused a fire at the Brown property claiming the lives of four residents and injuring several others.
B.
Seven lawsuits were brought on behalf of the four decedents' estates and by several individuals who were injured escaping the fire. Two lawsuits named Bierals as a defendant in addition to the City, and several named other City employees. The actions were consolidated.
In March 2013, the City and its employees moved for summary judgment. The trial court denied the motions in April 2013. In June 2013, the City and its employees again moved for summary judgment. The trial court ruled that all of the City employees except Bierals were entitled to absolute immunity under the TCA, N.J.S.A. 59:3-5 and -7, and granted summary judgment in favor of those defendants.
The trial court determined that Bierals was entitled to qualified immunity under N.J.S.A. 59:3-3 and that a genuine dispute of material fact existed as to whether he acted in good faith. The court also ruled that the City was entitled to qualified immunity.
At the close of discovery, Bierals and the City moved for summary judgment a third time, before a different judge, arguing **122 that they were entitled to absolute immunity. The court granted the motion in March 2015. Plaintiffs moved for reconsideration, and the court held a hearing on the issue. In April 2015, the court reconsidered and vacated the grant of summary judgment and concluded that qualified immunity should apply to Bierals and his employer, the City.
The Appellate Division granted Bierals and the City leave to appeal the April 2015 order. In June 2016, a three-judge panel affirmed the trial court's order in an unpublished opinion. The Appellate Division found the "central issue" to be whether Bierals and the City were "entitled to either absolute immunity under N.J.S.A. 59:3-5 and -7, or qualified immunity under N.J.S.A. 59:3-3." The panel held that they were entitled only to qualified immunity.
The panel determined that Bierals' actions fell within the qualified immunity provision because he was "enforcing" the law; the case did not involve a "failure to enforce" that would entitle Bierals and the City to absolute immunity. The panel held that there was a genuine dispute of material fact regarding whether Bierals acted in good faith under the qualified immunity provision.
The Appellate Division, relying on Bombace v. City of Newark, 125 N.J. 361, 593 A.2d 335 (1991), reasoned that "a jury could find that Bierals believed that something immediate needed to be done about the wiring in Brown's home, but he did not act in good faith because he did not want to deal with Del Carmen." Because plaintiffs *707 alleged that Bierals acted to enforce the law but did not act in good faith, the panel remanded to the trial court to decide the factual dispute.
We granted the motion for leave to appeal. 228 N.J. 31, 154 A.3d 672 (2016) ; cf. R. 2:2-2(b). We also granted amicus curiae status to the New Jersey State League of Municipalities and the New Jersey Institute of Local Government Attorneys (collectively, NJSLM) and to the New Jersey Association for Justice (NJAJ).
**123 II.
The City asserts that it is entitled to absolute immunity under N.J.S.A. 59:3-5, because the fire was caused by a failure to enforce the law, or under N.J.S.A. 59:3-7, because the fire was caused by a failure to inspect or negligent inspection. The City posits that the Appellate Division's judgment is contrary to Bombace, in which this Court found the City of Newark and its employee were entitled to absolute immunity. 125 N.J. at 374, 593 A.2d 335. According to the City, the fact that the fire inspector had taken a series of steps in Bombace did not convert the subsequent inaction-the termination of enforcement proceedings-into an affirmative act that would be entitled to only qualified immunity under the TCA. Instead, the critical causative conduct was the termination of enforcement proceedings and lack of subsequent action, entitling Newark to absolute immunity.
The City asserts that the availability of absolute immunity hinges on whether the critical causative conduct that gives rise to the injury is a failure to enforce the law. The City emphasizes that Bierals' failure to contact Del Carmen to pursue the shut-off was the critical causative conduct in this case. That failure qualifies as a failure to enforce the law, according to the City, and so the City is entitled to absolute immunity.
Alternatively, the City argues that the trial court improperly reconsidered the original grant of summary judgment and this Court should reinstate that order. The City contends that the motion judge abused his discretion by reconsidering and vacating the grant of summary judgment.
Bierals' arguments largely track those of the City. He contends that because he did not issue an "Unsafe Structure Notice" or tell Del Carmen about the issue and turn off the power, he is entitled to absolute immunity. Bierals also asserts that if the fire was a result of his inadequate inspection, he is shielded from liability by the absolute immunity provided by N.J.S.A. 59:3-7. Bierals points to the plaintiffs' failure to identify an affirmative act on his part that would subject him to the qualified immunity provision of the **124 TCA. Specifically, Bierals asserts that his failure to turn off the power upon discovering the faulty wiring and failure to notify his supervisor of the situation constitute a failure to enforce the law, entitling him to absolute immunity.
Plaintiff Hazel Hamrick Lee argues that the City and Bierals are entitled to qualified immunity under N.J.S.A. 59:3-3. Lee contends that Bierals' actions, including issuing violations and reporting the matter to Ragucci, constitute enforcing the law. Lee argues that her claim arises from how Bierals acted, not whether he did so. Lee distinguishes Bierals' conduct from that of the inspector in Bombace by pointing to the cessation of enforcement proceedings in that case in contrast to the continuing enforcement efforts by Bierals here. Lee claims that Bierals was actively engaged in enforcing the law and that the issue to decide is whether he acted in good faith, not whether he acted at all. Finally, Lee argues that the motion judge did not abuse *708 his discretion by reconsidering and vacating the grant of summary judgment.
Plaintiff Tyrone Byard, who was injured in the fire while escaping the building by jumping from a window, also argues that the City and Bierals are only entitled to qualified immunity. Byard contends that the most significant factor in the Bombace Court's analysis was the City's decision to terminate the enforcement proceedings by dismissing the action. Here, according to Byard, Bierals acted to enforce the law and never terminated enforcement. Instead, this case is about the manner in which Bierals enforced the law and his recognition that the panels constituted an imminent hazard. Finally, Byard argues that Bierals was acting in a ministerial capacity and failed to use means reasonably available to him to resolve an obvious danger, and that the matter of whether Bierals' actions were ministerial should be left to a jury.[1]
**125 Plaintiff representatives of the estate of Betty Jean Johnson, who perished in the fire, argue that the electrical connection was public property under control of the City. Johnson contends that only PSE & G and the City were authorized to work on the electrical connection to the grid and that Brown would be guilty of meter tampering if she attempted to alter the connection. Because it is public property controlled by the City, according to Johnson, the City was responsible for a dangerous condition on the property it controlled. The Appellate Division declined to address this issue, determining it was not an aspect of the order before the panel on leave to appeal. Therefore, the issue is not before this Court.
Amici NJSLM assert that the general rule for municipalities under the TCA is immunity from tort suits; liability is the exception. The groups contend that the threshold question is whether absolute immunity applies. If it does, they argue, the inquiry is complete; if it does not apply, the Court should then undertake the qualified immunity inquiry. NJSLM posit that absolute immunity is appropriate in this case, applying Bombace and providing an overview of the TCA. Amici warn that public entities will be exposed to a flood of tort claims from which the Legislature intended to insulate them if the Court does not reverse the Appellate Division's decision in this case.
Amicus NJAJ argues that Bierals' failure to shut off the power to the home was a failure to enforce a City policy, not a law.
**126 Bierals breached procedure but enforced the law by issuing violations even though he failed to shut off the power. NJAJ stresses that there was no decision by Bierals to terminate enforcement. Liability, according to NJAJ, is predicated on action in this case, not inaction. NJAJ contends that the inspection immunity provision *709 of the TCA- N.J.S.A. 59:3-7 -does not apply because it was not Bierals' inspection that caused the fire.
NJAJ also argues that this Court should recognize "special circumstances" and, even if we decide absolute immunity applies, hold the City and Bierals liable. The actions in this case, according to amicus, rise to the level of egregious misconduct and should be subject to liability.
III.
Courts may reconsider final judgments or orders within twenty days of entry. R. 4:49-2. "A motion for reconsideration ... is a matter left to the trial court's sound discretion." Guido v. Duane Morris LLP, 202 N.J. 79, 87, 995 A.2d 844 (2010) (citation and internal quotation marks omitted). Here, the trial court expressed doubt regarding its initial ruling and determined in the exercise of its discretion, on reviewing the facts before it, that reconsideration of the grant of summary judgment was warranted. We base our decision on the denial of summary judgment, not the decision to grant reconsideration.
Summary judgment is appropriate "when no genuine issue of material fact is at issue and the moving party is entitled to a judgment as a matter of law." Steinberg v. Sahara Sam's Oasis, LLC, 226 N.J. 344, 366, 142 A.3d 742 (2016) (citing R. 4:46-2(c) ). We review appeals from determinations of summary judgment by employing the same standards governing the trial court. Id. at 349-50, 142 A.3d 742 ; Globe Motor Co. v. Igdalev, 225 N.J. 469, 479, 139 A.3d 57 (2016). Because the dispute here involves the application of the TCA to the facts of this case, we review the determination de novo. See State v. Nantambu, 221 N.J. 390, 404, 113 A.3d 1186 (2015). That is, we give "deference to the supported **127 factual findings of the trial court, but" not to its "application of legal principles to such factual findings." Ibid. (quoting State v. Brown, 216 N.J. 508, 545, 83 A.3d 45 (2014) ).
The TCA effectuates the Legislature's intent to establish immunity for government action as the rule and liability as the exception. See N.J.S.A. 59:1-2 ("[I]t is hereby declared to be the public policy of this State that public entities shall only be liable for their negligence within the limitations of this act and in accordance with the fair and uniform principles established herein."). The statute strikes a balance between allowing municipal governments to perform their necessary functions without an avalanche of tort liability while holding public entities accountable for injuries that are a direct result of their wrongful conduct. See ibid. ("The Legislature recognizes the inherently unfair and inequitable results which occur in the strict application of the traditional doctrine of sovereign immunity. On the other hand, the Legislature recognizes that while a private entrepreneur may readily be held liable for negligence within the chosen ambit of his activity, the area within which government has the power to act for the public good is almost without limit and therefore government should not have the duty to do everything that might be done."). The legislative design insulates government from suit based on a violation "attributable to someone else's wrongful acts," when the government's conduct is "only an indirect contributing cause of the harm." Bombace, 125 N.J. at 372, 593 A.2d 335. Therefore, "application of the absolute immunity under the [TCA] is determined by whether the critical causative conduct by government employees consists of non-action or the failure to act with respect to the enforcement of the law." Id. at 373, 593 A.2d 335.
*710 The TCA grants absolute immunity from liability to public entities and their employees for injuries resulting from a failure to enforce the law. Bombace, 125 N.J. at 366, 593 A.2d 335. N.J.S.A. 59:3-5 provides: "A public employee is not liable for an injury caused by his adoption of or failure to adopt any law or by his failure to enforce any law." In contrast, public employees are **128 entitled only to qualified immunity when they are enforcing the law. N.J.S.A. 59:3-3 ("A public employee is not liable if he acts in good faith in the execution or enforcement of any law."). The TCA also insulates public entities and employees from liability for injuries due to a failure to inspect, or a negligent or inadequate inspection. N.J.S.A. 59:2-6, 59:3-7.
In Bombace, we determined that a "failure to enforce a law" under the absolute immunity provision means non-action or the failure to act, whereas the qualified immunity provision applies to actions "constituting enforcement of the law." 125 N.J. at 367-68, 593 A.2d 335. We held that "if conduct giving rise to injury consists only of non-action or the failure to act in the enforcement of the law, it is entitled to absolute immunity, even though other antecedent or surrounding conduct might constitute acts or action that would otherwise be subject to the qualified immunity." Id. at 370, 593 A.2d 335.
Much like the case before us, the City of Newark inspector in Bombace accurately discovered the code violation (an inoperative smoke detector), issued a violation notice, and sent a report to the fire inspector. Id. at 364, 593 A.2d 335. However, those acts were not the basis for liability; that is, they were not the critical causative conduct. The triggering event was the dismissal of the complaint, which ceased any enforcement action. "[S]uch conduct in a sequence of events will not convert a subsequent non-action or failure to act into affirmative acts governed by the good-faith immunity of [ N.J.S.A. 59:3-3 ]." Id. at 371, 593 A.2d 335. Absolute immunity under the TCA "is determined by whether the critical causative conduct by government employees consists of non-action or the failure to act with respect to the enforcement of the law." Id. at 373, 593 A.2d 335. "[N]on-action or failure to enforce the law ... falls within the absolute immunity of section 3-5 [of the TCA]." Id. at 374, 593 A.2d 335.
The gravamen of plaintiffs' complaints against the City and Bierals is that the fire was caused by Bierals' ineffective enforcement of the construction code. Because the issuance of violation **129 notices and remediation orders are "acts constituting enforcement of the law," id. at 368, 593 A.2d 335, according to plaintiffs, the municipal defendants are entitled only to qualified immunity.
We disagree. The critical causative conduct in this case was Bierals' failure to contact Del Carmen and secure an emergency power shut-off or to seek relief in court, not any affirmative action to enforce the law. The fire is alleged to have been caused by the faulty wiring on the electrical panels. It was not the result of any corrective action taken by Bierals. Like the cessation of court proceedings in Bombace, Bierals' omission, not any action taken by him, allowed the problem to linger. Under our interpretation of the TCA in Bombace, Bierals' prior conduct of inspecting and issuing notices of violation is not sufficient to subject him to liability. The failure to enforce the law is absolutely immune from liability under N.J.S.A. 59:3-5. Further, as in Bombace, the victims of the tragic fire here "would at least have a principal wrongdoer from whom to seek redress." Id. at 372, 593 A.2d 335. There is no dispute that the City's liability is conditioned *711 on that of Bierals, and thus the City is entitled to absolute immunity as well.
Because we find that Bierals and the City are entitled to absolute immunity, we need not reach the issue of whether the inspector acted in good faith.
IV.
We conclude that defendants Bierals and the City are entitled to summary judgment. Accordingly, we reverse the judgment of the Appellate Division and remand to resolve the remaining issues in this consolidated case.
CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, and PATTERSON join in JUSTICE FERNANDEZ-VINA's opinion. JUSTICES SOLOMON and TIMPONE did not participate.

This issue was not addressed in the April 8, 2015 order vacating the grant of summary judgment and was not addressed by the Appellate Division. "The standard for liability under the TCA depends on whether the conduct of individuals acting on behalf of the public entity was ministerial or discretionary." Henebema v. S. Jersey Transp. Auth., 219 N.J. 481, 490, 99 A.3d 336 (2014) (citing N.J.S.A. 59:2-3(d) ). "If the action was ministerial, liability for the public entity is evaluated based on an ordinary negligence standard." Ibid. Citing several cases regarding ministerial acts of first responders, Byard contends Bierals' acts were ministerial. We find that Bierals, as an inspector, had a broad range of discretion in investigating and resolving code violations-for example, he could issue a notice to repair the issue, a summary offense, or seek a shut-off through departmental procedure, among other options. Bierals was not required to follow a prescribed course of action by law and his actions were not subject to liability under an ordinary negligence standard.