**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4554-16T3

DANIEL MATTOS, as Executor for the
ESTATE OF CARY R. MATTOS, and
DANIEL MATTOS, Individually,

    Plaintiffs-Respondents,

v.

PVT. PETER S. HOTALEN — AMERICAN
LEGION POST 157; MARK F. SUSSMAN;
FLAVIAN SIMONELLI; PATRICIA SIMONELLI
and THOMAS K. ZOSCHAK,

    Defendants,

and

STATE OF NEW JERSEY and STATE OF
NEW JERSEY DEPARTMENT OF
TRANSPORTATION,

    Defendants-Appellants.

_____

> Argued February 28, 2018 – Decided  August 22, 2018
>
> Before Judges Fuentes, Manahan, and Suter.
>
> On appeal from Superior Court of New Jersey,
> Law Division, Sussex County, Docket No.
> L-0328-14.
>
> Robert J. McGuire, Deputy Attorney General,
> argued the cause for appellants (Gurbir S.

Grewal, Attorney General, attorney; Melissa Dutton Schaffer, Assistant Attorney General, of counsel; Robert J. McGuire, on the brief).

Jacqueline DeCarlo argued the cause for respondent Daniel Mattos (Individually) (Hobbie, Corrigan & Bertucio, PC, attorneys; Norman M. Hobbie and Jacqueline DeCarlo, of counsel; Jacqueline DeCarlo and Justin Lee Klein, on the brief).

Gill & Chamas, LLC, attorneys for respondent Estate of Cary Mattos, join in the brief of respondent Daniel Mattos.

PER CURIAM

The dispositive legal issue in the appeal concerns the immunity provided to public entities under the Tort Claims Act (TCA), N.J.S.A. 59:1-1 to -12-3. At all times relevant to this case, the State Department of Transportation (DOT) owned a tract of land located on Route 206, in Frankford Township. The DOT property is located across from Pvt. Peter S. Hotalen — American Legion Post 157 (American Legion). On March 15, 2014, plaintiff Daniel Mattos and his wife, decedent Cary Mattos,[1] parked their car on the DOT property to attend a St. Patrick's Day event held at the American Legion. Cary was struck and killed by a car driven by defendant Thomas K. Zoschak as she attempted to cross Route 206 to return to her parked car.

---

[1] In the interest of clarity, we will refer to parties who have the same last name by their first name when necessary. We do not intend any disrespect.

Plaintiffs filed this civil action against Zoschak, the American Legion, the DOT, and other individuals under various theories of liability. With respect to the DOT, plaintiffs claim the DOT knowingly permitted the American Legion to use the unimproved lot as an "over-flow" parking lot.[2] Plaintiffs argued this "created a dangerous, hazardous and unsafe condition [on the] property" because the DOT did not provide "warning[] [signs], crossing guards, safety lighting [or] patrol officers to assist in [pedestrian] crossing of U.S. Highway 206," or require the American Legion to provide these safety measures.

The DOT moved for summary judgment before the Law Division, arguing it was immune from liability under N.J.S.A. 59:2-4 of the TCA, which provides: "A public entity is not liable for any injury caused by adopting or failing to adopt a law or by failing to enforce any law." The DOT argued it was not legally obligated to prevent the unauthorized use of public property.

Plaintiffs argued the DOT was liable under N.J.S.A. 59:4-2, because they can prove that: (1) the property was in a dangerous condition at the time of Cary's death; (2) her death was proximately caused by the dangerous condition; (3) a public employee created the dangerous condition or had actual or

_____

[2] The American Legion has onsite parking.

constructive knowledge of the condition within sufficient time before the accident to have taken measures to protect Cary against this dangerous condition; and (4) the DOT's failure to act under these circumstances was palpably unreasonable.

The motion judge accepted plaintiffs' argument regarding the applicability of N.J.S.A. 59:4-2. Viewed through the lens of these statutory standards, the motion judge found there were several issues of material facts related to "whether the proximity of Route 206 to [the DOT's] property constituted a dangerous condition, whether [the DOT] had notice of said dangerous condition, and whether [the DOT's] failure to remediate the danger fell below the appropriate standard of care for a property owner."

By leave granted, the DOT now argues that the motion judge erred as matter of law in failing to dismiss plaintiffs' claims pursuant to N.J.S.A. 59:2-4. Alternatively, the DOT argues that even if N.J.S.A. 59:4-2 applies, plaintiffs did not present sufficient competent evidence that the property was in a dangerous condition at the time of the accident. We review the denial of a motion for summary judgment de novo, without affording any deference to the legal analysis of the motion judge. Nicholas v. Mynster, 213 N.J. 463, 478 (2013). We apply the standards codified in Rule 4:46-2(c) and review all of the facts in the appellate record in the light most favorable to plaintiffs as the non-moving

party.  Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).  Mindful of these standards, we conclude the motion judge erred in applying the statutory factors in N.J.S.A. 59:4-2, and dismiss plaintiffs' claims against the DOT as a matter of law pursuant to N.J.S.A. 59:2-4.  Our legal analysis is guided by the following salient facts.

On March 15, 2014, Daniel Mattos and his wife Cary Mattos drove their car to the American Legion located on Route 206 in Frankford Township to attend a St. Patrick's Day celebration.  The Mattos and their friends, Vivian Hill and William Hill, parked their cars on an unpaved, grassy parcel of land that is part of the DOT's property, located across from the American Legion.  Route 206 is a two lane road with a posted speed limit of fifty miles per hour.  There is no pedestrian crosswalk to allow those who parked their car on this property to cross Route 206 safely.[3]  The DOT maintains Route 206.

Plaintiffs and the Hills left the American Legion at approximately 10:30 p.m.  When Cary and Vivian attempted to cross Route 206, they were struck by a car driven by defendant Thomas S. Zoschak.  Immediately after the accident, Zoschak fled the scene without making any effort to stop his car.  Two days later,

---

[3]  The State Police Trooper who authored the accident report stated: "There were overhead street lights in the area, however, they would randomly turn off as I was at the scene."

Zoschak surrendered himself to the State Police. Cary Mattos sustained fatal head injuries and severe injuries to her lower extremities. She died at the scene and was officially pronounced dead at Morristown Medical Center. State Police North Star Medivac transported Vivian Williams to Morristown Medical Center, where she was treated for a fractured tibia of her right leg.

The State Police accident investigation report contains the following account of how the accident occurred:

> Both couples were leaving the [American Legion] building and attempted to cross [Route 206] in order [to] retrieve their vehicle, which was parked on the grass area off the northbound side [of Route 206]. Mr. Mattos explained to me that prior to crossing [Route 206] they noticed a pair of head lights in the distance and felt they could cross the highway safely. Mr. Mattos and Mr. Hill were crossing the road and Mrs. Mattos and Mrs. Hill were following close behind them. The next thing Mr. Mattos observed through his peripheral vision was his wife's body flying in the air before landing near the curb on [Route 206]. Mr. Mattos ran to his wife and yelled for someone to call 911.

The State Police reached the following conclusion with respect to the cause of the accident:

> [T]he cause of this crash can be attributed to [Cary] and [Vivian] failing to yield the right of way to [Zoschak's car] when crossing the roadway. The limited amount of overhead lighting, positive grade, and the dark clothing worn by [Cary] and [Vivian] may have all contributed to the inability of [Zoschak] to perceive [Cary] and [Vivian] in the roadway. Due to [Zoschak] fleeing the scene

6

of the crash, it is unknown to what extent his physical condition may or may not have contributed to the cause of this collision.

The DOT property is located at the intersection of Route 206 and Main Street. It is an unpaved, grassy lot without any designated means of egress and ingress for vehicular or pedestrian traffic. There are no barriers or fences blocking access to the property. On the side of the property adjacent to Main Street, there is a worn down patch that has been used as an unauthorized entrance and exit onto the property. The property extends to the shoulder of Route 206, and is at times used as a right-of-way by the DOT or the State Police.

At the time of the accident, there were several yellow chevron signs on the border of the property, adjacent to Main Street, to warn oncoming traffic of the bend in the road. A photo dated August 24, 2009, shows four yellow chevron warning signs bordering the property, facing out towards Main Street. From this record, we cannot determine how many chevron signs were on the property at the time of the accident.

DOT records show employees had been to the property to repair damaged chevron signs, and to replace a missing chevron sign. At the time of the accident, there were several signs placed at the border of the property to guide and control motor vehicle traffic; there were two signs to inform motorists the direction for U.S.

Route 206 north and south, a stop sign at the intersection to control motor vehicle traffic, and a sign for County Route 630. At his deposition, DOT Investigator William J. Hayden explained that it was illegal for persons attending events held at the American Legion to use the property as a parking lot. The DOT did not have "No Trespassing" signs on the property at the time of the accident.[4]

Based on this record, plaintiffs' theory of liability is predicated on the DOT's failure to take affirmative measures to prevent people from improperly using this lot as a de facto parking area for events held at the American Legion. For purposes of our analysis, we will assume that plaintiffs can show that the DOT had actual or constructive knowledge that: (1) the property was being used as a de facto parking lot; (2) people who used the lot for parking were thereafter crossing Route 206 to attend events at the American Legion; and (3) crossing Route 206 under these circumstances exposed pedestrians to a high risk of being struck by vehicular traffic.

---

[4] The DOT posted a "No Trespassing" sign after the accident and added additional chevron warning signs directly onto the worn down section of land, blocking public access through this part of the property. These subsequent remedial measures are not admissible to establish negligence. N.J.R.E. 407.

The Legislature has declared, as a matter of public policy, "that public entities shall only be liable for their negligence within the limitations of this act and in accordance with the fair and uniform principles established herein.  All of the provisions of this act should be construed with a view to carry out the above legislative declaration."  N.J.S.A. 59:1-2.  In furtherance of this public policy, "[a] public entity is not liable for any injury caused by adopting or failing to adopt a law or <u>by failing to enforce any law</u>."  N.J.S.A. 59:2-4 (emphasis added).

Our Supreme Court's decision in <u>Lee v. Brown</u>, 232 N.J. 114 (2018) is the most recent case that has examined the question of liability for public entities under the TCA.  In <u>Lee</u>, a fire consumed a multifamily building located in the City of Paterson, causing the death of four residents and injuring several others occupants.  <u>Lee</u>, 232 N.J. at 118.  The parties affected by this tragedy filed several civil actions against a number of private parties and public entities.  <u>Id.</u> at 119.  As framed by the Court, "the question arose whether the City and its electrical inspector . . .[,] alleged by the plaintiffs to be at least partially at fault for the fire[,] are entitled to qualified or absolute immunity under the TCA, N.J.S.A. 59:3-3, -5, or -7."  <u>Ibid.</u>  The following facts informed the Court's legal analysis.

A-4554-16T3

Approximately six months before the fire, a City Fire Department inspector responded to the building to investigate the source of "smoke coming from a boiler." Id. at 120. The inspector "discovered improper wiring in the electrical panels in the basement and notified the City's electrical department that the issue required further inspection." Ibid. Two days later, the City's electrical inspector followed up on the Fire Department's referral and inspected the building's electrical "panels and determined that the wiring did not comply with the building code." Ibid. The electrical inspector photographed the faulty electrical panels and told the building's owner "that the wiring was extremely dangerous." Lee, 232 N.J. at 120.

The next day, the electrical inspector issued a "Notice of Violation and Order to Terminate." Ibid. The property owner did not heed the warning and did not take any action to correct the electrical wiring. Ibid. Three months later, the City sent the owner a "Notice and Order of Penalty," that cited "specific violations of the Uniform Construction Code Act and various regulations." Ibid. When the electrical inspector returned to the building one month later, the owner told him that she had not made any of the repairs identified in the Notice of Violation. Ibid. The inspector told the owner to hire an electrician and complete all of the repairs within two weeks. Ibid. The inspector

A-4554-16T3

also "directed" the owner to notify him when the electrician arrived.  Lee, 232 N.J. at 120.

In the report filed to document this encounter with the owner, the inspector misrepresented "that he had re-inspected the wiring."  Ibid.  In fact, the inspector merely "relied on [the owner's] representation that the issue had not been corrected."  Ibid.  According to the inspector, he met with an employee of the City's Community Improvements Department, showed her the photographs that depicted the faulty electrical wires, and "told her something had to be done to remedy the problem."  Ibid.  According to electrical inspector, the City's policy "required him to notify his direct supervisor . . . of an imminent hazard and . . . [his supervisor] would ultimately determine whether to shut off the power."  Id. at 120-121.

This bureaucratic ineptitude failed to produce any results, and the dangerous condition created by the building's defective electrical wiring remained unaddressed.  Approximately one month after the electrical inspector was last at the site, "the faulty wiring caused a fire at the  . . . property claiming the lives of four residents and injuring several others."  Id. at 121.

Against these facts, a unanimous Supreme Court held:

> The critical causative conduct in this case was [the electrical inspector's] failure to contact [his supervisor] and secure an emergency power shut-off or to seek relief in

A-4554-16T3

court, not any affirmative action to enforce the law. The fire is alleged to have been caused by the faulty wiring on the electrical panels. It was not the result of any corrective action taken by [the electrical inspector]. Like the cessation of court proceedings in [Bombace v. City of Newark, 125 N.J. 361 (1991)], [the electrical inspector's] omission, not any action taken by him, allowed the problem to linger. Under our interpretation of the TCA in Bombace, [the electrical inspector's] prior conduct of inspecting and issuing notices of violation is not sufficient to subject him to liability. The failure to enforce the law is absolutely immune from liability under N.J.S.A. 59:3-5. Further, as in Bombace, the victims of the tragic fire here "would at least have a principal wrongdoer from whom to seek redress." There is no dispute that the City's liability is conditioned on that of [the electrical inspector's], and thus the City is entitled to absolute immunity as well.

[Lee, 232 N.J. at 129 (emphasis in original) (quoting Bombace, 125 N.J. at 372).]

Here, plaintiffs seek to hold the DOT liable based on its failure to prevent the public from using its land as a parking lot. Stated differently, plaintiffs argue the DOT is liable for plaintiffs' misuse of public property based on the DOT's failure to place "No Trespassing" signs on the property, or surround the property with some kind of parameter fence. Plaintiffs also argue the DOT should have facilitated the misuse of its property by creating a pedestrian crossway on Route 206 and posting police officers to control vehicular traffic every time the American Legion held an event that requires additional parking.

A-4554-16T3

Plaintiffs' cause of action against the DOT would have a modicum of substantive merit if Cary's death was proximately caused by a dangerous condition located on the property itself. Here, however, Cary and Vivian voluntarily decided to cross Route 206 at approximately 10:30 p.m., wearing dark clothing, and in an area of the road where the overhead lighting provided intermittent illumination. Plaintiffs' arguments imposing an affirmative responsibility on the DOT to facilitate the misuse of its property lacks sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

In our view, the facts the Court confronted in Lee were far more compelling from the perspective of the plaintiffs. Yet the Court decisively found the public employees and their public entity employer entitled to absolute immunity under the TCA. We recognize that in Lee, the Court's reasoning was guided by N.J.S.A. 59:3-5, which provides: "[a] public employee is not liable for an injury caused by his adoption of or failure to adopt any law or by his failure to enforce any law." (Emphasis added). Here, the DOT seeks the immunity under N.J.S.A. 59:2-4, which provides: "[a] public entity is not liable for any injury caused by adopting or failing to adopt a law or by failing to enforce any law." (Emphasis added). The Court's reasoning in Lee applies with equal force

here, entitling the DOT to absolute immunity under N.J.S.A. 59:2-4.

We thus reverse the order of the Law Division denying the DOT's motion for summary judgment and dismiss with prejudice all claims made by plaintiffs against the DOT under N.J.S.A. 59:2-4 of the TCA.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4554-16T3