NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A- 0576-20

PAMI REALTY, LLC,

      Plaintiff-Respondent/
Cross-Appellant,

v.

LOCATIONS XIX INC. d/b/a
LOCATIONS CONSTRUCTION,

      Defendant-Appellant/
Cross-Respondent.

_____

APPROVED FOR PUBLICATION

July 15, 2021

APPELLATE DIVISION

Argued May 11, 2021 – Decided July 15, 2021

Before Judges Fisher,[1] Gilson, and Gummer.

On appeal from Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-5845-18.

Gregory M. Gennaro argued the cause for appellant/cross-respondent.

Ralph P. Ferrara argued the cause for respondent/cross-appellant (Ferrara Law Group, PC, attorneys; Ralph P. Ferrara and Kevin J. Kotch of counsel and on the briefs).

---

[1] Judge Fisher did not participate in oral argument.  He joins the opinion with counsel's consent.  R. 2:13-2(b).

The opinion of the court was delivered by

GUMMER, J.S.C., (temporarily assigned).

The issue on this appeal is whether the parties agreed to involve the arbitrator in settlement discussions and, if so, whether that agreement had to be in writing. Plaintiff Pami Realty LLC (Pami) and defendant Locations XIX Inc. d/b/a Locations Construction (Locations) participated in an arbitration of a construction-contract dispute. During the arbitration, the arbitrator discussed settlement with the parties and counsel. When those discussions were not fruitful, the arbitration resumed. After the arbitration hearings had been completed and the arbitrator had advised counsel in an email that he would be issuing an opinion in defendant's favor, plaintiff's counsel, having not objected previously, complained for the first time that the arbitrator had exceeded his authority by participating in settlement discussions. Defendant asserts the parties agreed that the arbitrator could participate in settlement discussions and continue his role as arbitrator.

After the arbitrator issued a decision in favor of defendant, a series of motions and cross-motions ensued in the Law Division. Without conducting an evidentiary hearing, the motion judge ultimately denied defendant's motion to confirm the arbitration award, granted plaintiff's motion to vacate the award,

2

and ordered the parties to arbitrate their dispute while the funds in dispute remained held in escrow.

Because the parties' agreement, if any, to permit the arbitrator to participate in settlement discussions did not have to be in writing and because the motion judge failed to conduct an evidentiary hearing to resolve the parties' factual disputes regarding the existence of an agreement, we reverse the orders denying defendant's motion to confirm the arbitration award, granting plaintiff's motion to vacate it and denying defendant's motion for reconsideration of those issues. We remand, directing the motion judge to conduct an evidentiary hearing. We affirm the order denying plaintiff's cross-motion to release the escrowed funds.

## I.

On August 30, 2015, the parties entered into a contract in which plaintiff agreed to pay defendant $1,559,100 for "site work, shell building" on property owned by plaintiff. Section 6.2 of the contract provided: "[f]or any [c]laim subject to, but not resolved by, mediation pursuant to Section 15.3 of [American Institute of Architects] (AIA) Document A201-2007, the method of binding dispute resolution shall be as follows: . . . Arbitration pursuant to Section 15.4 of AIA Document A201-2007."

3

About three years later, defendant filed a construction lien claim, asserting entitlement to a $125,000 payment and later filed an amended construction lien claim, asserting entitlement to a total of $219,939.50. Plaintiff filed a lawsuit, seeking removal of defendant's lien claim, a judgment preventing defendant from reasserting any lien based on currently-claimed amounts, and an award of damages, costs of suit, and attorney's fees.

After defendant answered plaintiff's lawsuit, plaintiff moved for an order to proceed summarily, to discharge the lien, and to require defendant to return the project plans and permits. During a break in the oral argument of that motion, the parties agreed to resolve the lien claim and plaintiff's lawsuit, with plaintiff posting a bond for 125% of the amount stated in defendant's amended lien claim and defendant discharging its lien claim on the posting of the bond. The parties also agreed defendant would institute arbitration proceedings to resolve their disputes. When plaintiff did not obtain the bond, the parties entered into a consent order permitting plaintiff to place $274,924.37, which was the agreed-on bond amount, in its attorney's trust account in lieu of obtaining a bond. The consent order provided the funds "shall remain in escrow in the trust account . . . pending the completion of the arbitration proceeding between the parties and the issuance of an arbitration award."

4

The parties retained a retired judge as the arbitrator. The agreement between the parties and the arbitrator provided that "[e]xcept on basic procedural matters, the parties (and their representatives) shall have no ex parte communications with the Arbitrator concerning the arbitration." Although the agreement did not reference mediation, it contained the following provisions regarding settlement:

> 4. Your client(s) and/or representative(s) of your client(s) with authority to settle must be either present at the arbitration or immediately available by phone to facilitate any settlement discussions and decisions.

> 5. The parties agree that all discussions, if any, concerning settlement remain confidential, and that no party shall subpoena the Arbitrator to testify concerning statements made by anyone during the arbitration or during settlement discussions. Nor will any party subpoena documents generated by or during the arbitration. The parties will defend the Arbitrator from any subpoena(s) issued by third parties, or reimburse the Arbitrator for such defense, at the Arbitrator's discretion.

In its arbitration complaint, defendant sought $358,194.50 in compensatory damages. In its "Claim for Damages," plaintiff asserted damages exceeding $200,000.

On the afternoon of the second day of the arbitration, the parties discussed settlement. The parties disagree as to what lead to those discussions.

A- 0576-20

According to defense counsel, the arbitrator "offered to assist the parties in discussing settlement if they were so inclined to do so, and provided they waived any conflict of interest and agreed that he would continue as arbitrator if a settlement was not reached" and neither counsel nor the parties "expressed any objection or reservation whatsoever to [the arbitrator's] proposed assistance. On the contrary, everyone in the room was in agreement."

According to plaintiff's counsel, after having an ex parte communication with defense counsel in a separate office, the arbitrator "came into our break-out room and stated that the case needs to settle as soon as possible and directed that we would be using the remainder of the day to conduct settlement negotiations. This wasn't a question posed by [the arbitrator]; it was an instruction." Plaintiff's counsel denied there was any "discussion of any conflict of interest or waiving any conflict or waiving the mediation privilege."

The parties also disagree about what happened when the settlement discussions ended that afternoon. According to defense counsel, when the settlement discussions were not successful, the "parties reconvened in the arbitration room to schedule the next (and final) hearing date." According to plaintiff's counsel, the settlement negotiations continued the next day with the arbitrator contacting him by telephone.

6

The arbitration subsequently resumed for a final day of testimony. About six weeks after the parties had submitted their post-hearing briefs, the arbitrator emailed counsel, advising them he had finished his opinion but that it would "take some time to fine tune and send out the finished copy." "In order to provide some information," he told counsel he had found in favor of defendant and had rejected plaintiff's counterclaim, with a "net award" of $342,494.50 to defendant.

Plaintiff's counsel responded with a letter two days later, stating, even though he had not yet seen it, the decision appeared to be "inconsistent with what we discussed during the mediation" and for the first time objecting to the arbitrator's participation in settlement discussions, citing Minkowitz v. Israeli, 433 N.J. Super. 111, 142-47 (App. Div. 2013). He asserted, "[a]fter receiving your email, it became apparent that the mediation presented a host of problems." He argued the arbitrator "had no authority to act as mediator in this matter and then re-assume the role of arbitrator" and his "decision to act as mediator created a conflict of interest that neither party waived through the arbitration agreement." He suggested the arbitrator "cease drafting whatever reasoned award you may be preparing and direct the parties to go to mediation with a separate mediator to try to resolve this case." Counsel stated that if the

arbitrator failed to follow that suggestion, plaintiff would move to vacate any award he entered.[2]

The arbitrator emailed the parties two days later, referencing plaintiff's counsel's "belated objection to my continuing role as arbitrator" and rejecting plaintiff's counsel's interpretation of the Minkowitz case. The arbitrator stated:

> At the same time as I raised the issue of settlement during the arbitration, I simultaneously raised the issue [of] my potential conflict of interest, if I was going to continue as arbitrator if the matter did not settle. Both attorneys discussed the conflict issue with their clients and enthusiastically waived the conflict. Once it was determined that the matter was not going to settle, [plaintiff] for a second time waived the conflict and continued to voluntarily participate in the remainder of the arbitration. At no time did I compel the parties to mediate and at no time after the abbreviated settlement discussions did [plaintiff] raise the issue of conflict. In fact, I was the only one who raised the issue at the appropriate time, which [plaintiff] clearly waived. It seems rather disingenuous for [plaintiff] to now raise the conflict issue for the first time, after I have ruled against them. Accordingly, I reject [plaintiff's] attempt to invalidate my award. I will continue to complete my written opinion and will supply it to the parties shortly.

Plaintiff's counsel responded in a letter, faulting the arbitrator for participating in ex parte communications, accusing him of breaching the arbitration agreement or inducing the parties to breach it, and again asking he cease

---

[2] Defense counsel apparently responded. We were not provided with a copy of that letter.

"drafting of the award" and refer the parties to an outside mediator. Plaintiff's counsel also sent an email, disagreeing with the arbitrator's "historical recitation" and expressing his belief that issuing an award was not "the most efficient [road] in bringing about a final resolution in this matter."

According to plaintiff's counsel, the arbitrator contacted him and asked him about how the parties could resolve the matter. Although by then he had complained about the arbitrator participating in settlement discussions, plaintiff's counsel agreed to speak to his client and respond to the arbitrator's proposal by the end of the week. He responded to the arbitrator "a few days later . . . and emailed him and [defense counsel] what the terms would be for us to go back to the negotiation table." Defense counsel declined to participate in any further settlement negotiations and asked the arbitrator to issue his report.

Approximately six weeks later, the arbitrator issued an opinion finding in favor of defendant with an award of $282,494.50. About an hour later, he had an email sent to counsel, advising them a "revised decision" was attached because "[i]n reviewing the opinion, it appears that the award amount . . . ($282,494.50) isn't accurate. The total award amount is $342,494.50." In both decisions, the arbitrator stated: "with the consent of both parties the Arbitrator spent a short amount of time trying to settle this claim. Both sides agreed that

9

they would waive any potential conflict of interest, caused by the brief settlement discussion."

## II.

Defendant moved to confirm the arbitration award. Plaintiff cross-moved to vacate the arbitration award, asserting the arbitrator had "exceeded his powers when he resumed the role of arbitrator after acting as a mediator mid-arbitration" and that any agreement to have him act as a mediator had to be in writing. Defendant opposed plaintiff's cross-motion, contending the arbitration agreement referenced and anticipated the arbitrator's involvement in settlement discussions, plaintiff's reliance on Minkowitz was misplaced because its holding was limited to family-court cases, and plaintiff had waived any right to object to the arbitrator's involvement in settlement discussions by failing to object initially and by participating in the remaining arbitration proceedings.

The motion judge entered an order denying defendant's motion to confirm the arbitration award and an order granting plaintiff's cross-motion to vacate the arbitration award. In a one-page statement of reasons attached to the cross-motion order, the motion judge found the arbitrator had exceeded his authority by acting as both the mediator and arbitrator, citing Minkowitz, 433 N.J. Super. at 148. The motion judge held the "arbitration retainer does not

10

support the notion that the parties had agreed to his potential role as both mediator and arbitrator" and "absent an agreement between the parties to permit [the arbitrator] to act in the dual-capacity as mediator and arbitrator, the Court finds that [the arbitrator] had exceeded his powers of arbitration." The motion judge did not address defendant's waiver argument.

Defendant moved for reconsideration of those orders, asking the motion judge to vacate the orders and grant its motion to confirm the arbitration award or, alternatively, to "schedule an evidentiary hearing for the parties to present evidence and testimony with respect to the issue of waiver/estoppel" or to "order the parties to arbitrate their disputes . . . until a binding award is entered . . . ." Plaintiff moved to modify the consent order to permit the release of funds being held in escrow by plaintiff's counsel and for a determination that plaintiff had "satisfied its obligation to participate in an arbitration" and the parties could pursue "any claims . . . by filing a new lawsuit."

After conducting oral argument, the motion judge issued two orders. In the order on defendant's motion, the judge denied all of the relief requested by defendant, except he ordered the parties to "arbitrate their disputes . . . until a binding award is entered . . . ." In the other order, the motion judge denied plaintiff's motion and ordered that the funds remain in plaintiff's counsel's trust account.

## III.

Defendant appeals the order denying its motion to confirm the arbitration award, the order granting plaintiff's cross-motion to vacate the award, and the aspects of the reconsideration-motion order denying defendant's requested relief. Defendant argues the motion judge erred in (1) his interpretation and application of Minkowitz; (2) failing to "consider and apply principles of waiver and estoppel to preclude [plaintiff] from complaining after the fact about [the arbitrator's] handling of the proceedings"; and (3) failing to hold an evidentiary hearing to resolve disputed facts.[3] Defendant asks us to exercise original jurisdiction to confirm the arbitration award if "there are no genuine issue[s] of material fact regarding the parties' agreement [concerning the arbitrator's participation in settlement discussions] and the parties' voluntary participation in the remainder of the arbitration proceedings without objection."

Plaintiff cross-appeals the order denying its motion to modify the consent order and the aspect of the reconsideration-motion order requiring the parties to arbitrate their claims. Plaintiff argues the motion judge correctly

---

[3] Defendant also argues the motion judge erred to the extent he considered plaintiff's complaints about the arbitrator's "handling of the evidence or his decisions on the merits." We do not address that argument because we see no indication the motion judge considered evidential or ultimate decisions.

applied <u>Minkowitz</u> in holding any agreement regarding the arbitrator's participation in settlement discussions had to be in writing and did not err in failing to consider waiver or estoppel or to hold an evidentiary hearing. In its cross-appeal, plaintiff faults the motion judge for not allowing its attorney to return the escrowed funds and for requiring the parties to continue to arbitrate, arguing "the arbitration is complete," "circumstances surrounding entry of the initial consent order have changed," and plaintiff "has satisfied its obligation to participate in an arbitration."

## A.

We review de novo a trial court's legal conclusions, <u>Clark v. Nenna</u>, 465 N.J. Super. 505, 511 (App. Div. 2020), including decisions to affirm or vacate arbitration awards, <u>Yarborough v. State Operated Sch. Dist. of City of Newark</u>, 455 N.J. Super. 136, 139 (App. Div. 2018). We give deference to a trial court's factual findings if they are supported by substantial, credible evidence in the record but not to the application of law to those findings. <u>Lee v. Brown</u>, 232 N.J. 114, 126-27 (2018); <u>Zaman v. Felton</u>, 219 N.J. 199, 215 (2014).

The New Jersey Arbitration Act, N.J.S.A. 2A:23B-1 to -36 (the Act), authorizes a party to file a summary action to confirm an arbitration award. N.J.S.A. 2A:23B-22. A court may vacate an award for very limited and

specific enumerated reasons, including the only reason[4] cited by plaintiff: "an arbitrator exceeded the arbitrator's powers."  N.J.S.A. 2A:23B-23(a)(4); <u>see also</u> <u>Kearny PBA Local # 21 v. Town of Kearny</u>, 81 N.J. 208, 221 (1979) ("An arbitrator's award is not to be cast aside lightly.  It is subject to being vacated only when it has been shown that a statutory basis justifies that action.").

We address first the motion judge's interpretation and application of <u>Minkowitz</u> because it appears to be the basis of the decision to deny defendant's motion to confirm and grant plaintiff's motion to vacate the arbitration award.  We agree <u>Minkowitz</u> applies[5] and that it stands for the concept that "parties engaged in arbitration must explicitly agree to permit [an]

---

[4]  In its motion to vacate the award, plaintiff did not assert the arbitrator was partial or corrupt or had engaged in misconduct, N.J.S.A. 2A:23B-23(a)(2), or that the arbitration decision was "procured by corruption, fraud, or other undue means,"  N.J.S.A.  2A:23B-23(a)(1),  or  was  based  on  "confidential communications gained in mediation," <u>Minkowitz</u>, 433 N.J. Super. at 145.

[5]  We are unpersuaded by defendant's argument that <u>Minkowitz</u> applies only to family cases.  The legal analysis concerning the roles of arbitrator and mediator applies in both family and non-family matters.  It's just, as we stated in <u>Minkowitz</u>, the concern about the parties' belief in the arbitrator's objectivity "becomes even more problematic when arbitrating matrimonial disputes between already suspicious adverse parties."  <u>Id.</u> at 146-47.  And saying "[i]n the family law context, we could envision parties agreeing in writing" isn't establishing a requirement that all parties in all cases place their agreements in writing. <u>Id.</u> at 147.  It is a recognition that given the heightened emotions in family-law disputes, it makes even more practical sense for the parties to place their agreement in writing.

arbitrator [to] continue hearings as arbitrator after conducting a mediation." We disagree that Minkowitz held the agreement must be in writing.

In Minkowitz, considering the public policy favoring settlement of litigation and the language of the Act, we held the Act did not foreclose settlement negotiations in an arbitration. Id. at 138-39. And we recognized that using one person to both arbitrate and mediate "should be the parties' choice." Id. at 147. Because of the differences in the roles of arbitrator and mediator and because a mediator may "become privy to party confidences," we found an arbitrator could not act as a mediator and then return to the role of arbitrator "absent the parties' agreement." Id. at 142. We held an arbitrator who acted as a mediator could not then assume the role of arbitrator "absent the parties' contract to the contrary." Id. at 147-48. We did not say absent the parties' written agreement or contract.[6] Canon IV of The Code of Ethics for Arbitrators in Commercial Disputes, which we quoted in Minkowitz, requires a request from all parties, not a written agreement, for an arbitrator to participate in settlement discussion. Id. at 146 ("an arbitrator should not be present or

---

[6] Kernahan v. Home Warranty Administrator of Florida Inc., 236 N.J. 301 (2019), is the only other published opinion plaintiff cites to support the argument that an agreement for an arbitrator to participate in settlement discussions must be in writing. Kernahan does not support that argument and does not address that issue but instead addresses whether the parties' contract contained an enforceable agreement to arbitrate.

otherwise participate in the settlement discussions unless requested to do so by all parties") (quoting The American Arbitration Association & The American Bar Association, The Code of Ethics for Arbitrators in Commercial Disputes 8 (2004), https://www.americanbar.org/content/dam/aba/administrative/dispute_ resolution/dispute_resolution/commercial_disputes.pdf.).

No doubt, the better course is to put the agreement in writing. Litigants could avoid the imbroglio in which these parties now find themselves. But we see nothing in the Act or in Minkowitz requiring the agreement to be in writing or that would cause us to set aside bedrock contract law establishing the validity of oral contracts and agreements. See Leodori v. Cigna Corp., 175 N.J. 293, 304-05 (2003) ("[u]nless required by the Statute of Frauds, N.J.S.A. 25:1-5 to -16, or as otherwise provided by law, contracts do not need to be in writing to be enforceable"); Williams v. Vito, 365 N.J. Super. 225, 232 (Law Div. 2003) (finding that "absent a statute to the contrary," the enforceability of an oral contract was "central to American contract law").

In sum, parties can agree to have an arbitrator participate in settlement discussions and continue as arbitrator. That agreement does not have to be in writing. We reverse and vacate the motion judge's order denying defendant's motion to confirm the arbitration award, the order granting plaintiff's cross-

motion to vacate the award, and the related aspects of the reconsideration-motion order.

A determination as to whether parties agreed to an arbitrator participating in settlement discussions during an arbitration is inherently fact sensitive and cannot be resolved based on conflicting certifications from counsel. See R. 4:67-5 (where "there may be a genuine issue as to a material fact, the court shall hear the evidence as to those matters which may be genuinely in issue . . . ."); Courier News v. Hunterdon Cnty. Prosecutor's Off., 358 N.J. Super. 373, 378-79 (App. Div. 2003) (finding a court in a summary action must conduct an evidentiary hearing if genuine issues of material fact are in dispute); see also Bruno v. Gale, Wentworth & Dillon Realty, 371 N.J. Super. 69, 76-77 (App. Div. 2004) (reversing and remanding for an evidentiary hearing to resolve conflicting factual contentions in certifications). And that is what we have here. As plaintiff acknowledged in its main brief, the "record below consisted of dueling certifications." Accordingly, we reverse the aspect of the reconsideration-motion order denying defendant's request for an evidentiary hearing and remand this matter for an evidentiary hearing for the motion judge to resolve the parties' conflicting factual contentions and

17

determine whether the parties agreed the arbitrator could participate in settlement discussions and resume his role as arbitrator.

We are, and the motion judge should be, mindful that the agreement retaining the arbitrator provided "no party shall subpoena the Arbitrator to testify concerning statements made by anyone during the arbitration or during settlement discussions." We leave it to the motion judge to determine the meaning and application of that provision under the present circumstances and the structure and scope of the evidentiary hearing, with the understanding that the point of the hearing is to resolve the parties' conflicting factual contentions regarding whether they agreed the arbitrator could participate in settlement discussions and resume his role as arbitrator. After resolving those factual disputes, the motion judge can then determine whether the parties had an agreement and, ultimately, the issue raised in plaintiff's motion to vacate the arbitration award: whether the arbitrator "exceeded" his powers. See N.J.S.A. 2A:23B-23(a)(4).

Because that is the issue the motion judge ultimately must decide, we do not see this case as involving waiver, estoppel, or laches. For an arbitrator to have had authority to participate in settlement discussions and then resume his role as arbitrator, the parties would have had to agree to give him that authority. If that agreement existed, the arbitrator did not exceed his powers.

18

If that agreement did not exist, then he engaged in "unauthorized action," Minkowitz, 433 N.J. Super. at 153, and exceeded his powers.

## C.

To resolve defendant's lien claim and plaintiff's lawsuit to remove the lien claim, the parties agreed plaintiff would post a bond and defendant would discharge its lien claim on the posting of the bond and institute arbitration proceedings. The parties agreed "to submit all of their disputes arising out of the subject construction project to arbitration . . . ."[7] That agreement was consistent with the parties' contract.

When plaintiff failed to obtain the bond, the parties entered into a consent order allowing and requiring plaintiff to deposit funds in its attorney's trust account in lieu of obtaining a bond. The consent order provided the funds "shall remain in escrow in the trust account . . . pending the completion of the arbitration proceeding between the parties and the issuance of an arbitration award."

---

[7] Our remand renders moot the aspect of the reconsideration-motion order directing the parties to arbitrate their disputes. Nevertheless, we note that that ruling was consistent with the parties' agreement "to submit all of their disputes arising out of the subject construction project to arbitration" and with Minkowitz. 433 N.J. Super. at 153 (remanding for consideration by a new arbitrator).

A- 0576-20

No arbitration award has been issued. Neither party has been issued the funds it seeks. Nor can we say the arbitration has been completed given the current status of the case. Based on the clear and simple terms of the consent order, the motion judge correctly denied plaintiff's request for the release of the funds and did not err in declining to amend the consent order to provide for the release of the funds. See Quinn v. Quinn, 225 N.J. 34, 45 (2016) (finding "a court should not rewrite a contract or grant a better deal than that for which the parties expressly bargained").

IV.

In sum, we reverse and vacate the motion judge's order denying defendant's motion to confirm the arbitration award, the order granting plaintiff's cross-motion to vacate the award, and the related aspects of the reconsideration-motion order. We reverse the aspect of the reconsideration-motion order denying defendant's request for an evidentiary hearing and remand with instructions to conduct an evidentiary hearing. We affirm the order denying plaintiff's motion to modify the consent order.

Affirmed in part; reversed in part; and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A- 0576-20