**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4039-19

RIM BAOUAB,

    Plaintiff-Appellant,

v.

2600 ASSOCIATION, INC.,
YAKNOW MANAGEMENT,
LLC, JOE WILLIAMS, FRAN
ARAGONA, STEVE
BOWMAN, MIKE CAMPBELL,
DANIEL LEVIN, and SHANTELL
MARTIN,

    Defendants-Respondents.

_____

    Submitted December 15, 2021 – Decided December 28, 2021

    Before Judges Whipple and Geiger.

    On appeal from the Superior Court of New Jersey, Law
    Division, Hudson County, Docket No. L-3760-18.

    Rim Baouab, appellant pro se.

    Leary Bride Mergner & Bongiovanni, PA, attorneys for
    respondents (Brian Peoples, on the brief).

PER CURIAM

This case arises out of water infiltration from February to May 2018 into a condominium unit (Unit 10E), owned by plaintiff Rim Baouab, that is located on the top floor of The Hague Building in Jersey City. Plaintiff alleges that on February 11, 2018, a Nor'easter hit the area, causing a flood of water that infiltrated the roof of Unit 10E. Plaintiff also alleges second and third water intrusions in Unit 10E in February or March and May 2018. Plaintiff claims the water infiltration caused significant damage to the sheetrock, flooring, cabinets, molding, appliances, and other items in the Unit 10E. Plaintiff brought this action seeking damages for alleged negligence, breach of contract, and breach of fiduciary duty against the homeowners' association, its members, the building manager, and its sole member.

Defendant 2600 Association, Inc. (the Association), is the condominium owners' association charged with upkeep, maintenance, and care of The Hague Building. Defendants Shantell Martin, Steve Bowman, Fran Aragona, Daniel Levin, and Mike Campbell are members of the Board of Trustees of the Association. Defendant Yaknow Management, LLC (Yaknow) was hired by the Association to maintain, oversee, and administer the common areas of The Hague Building. Defendant Joe Williams was the managing member of

2

Yaknow, which is no longer a registered business entity in New Jersey. There is no evidence that Williams had any personal contractual relationship with the Association.

Plaintiff appeals from Law Division orders: (1) barring plaintiff's expert report as a net opinion; (2) granting summary judgment to the trustees of the homeowners' association; (3) granting summary judgment to Williams; (4) dismissing plaintiff's claims for failure to substantiate her claims; and (5) denying reconsideration.

On May 30, 2018, plaintiff filed a pro se verified complaint in the Chancery Division, alleging the following causes of action: (1) the right to injunctive relief compelling defendants the Association and its trustees to immediately repair the roof, among other immediate remedies (count one); (2) breach of covenant requiring injunctive relief and compensatory damages with respect to Unit 10E against the Association and its trustees for failing to repair, inspect, and detect the condition of the flooded roof (count two); (3) breach of covenant against the Association and its trustees; (4) breach of contract against the Association (count four); (5) breach of fiduciary duty against the Association and its trustees for failing to promptly repair the roof requiring injunctive relief and compensatory damages (count five); and (6) negligence against the

A-4039-19

Association, its trustees, Yaknow, and Williams for failing to exercise ordinary care in a reasonably safe and prudent manner by failing to inspect and repair the roof.

Plaintiff sought injunctive relief: (a) "temporarily, preliminarily and permanently enjoining [the Association] and the Trustees from causing additional water damage to Unit 10E"; (b) "compelling the Association and its Trustees to repair the roof of The Hague Building and/or[] otherwise fix the water leaking into Unit 10E within three days of the order"; (c) "for specific performance of [the Association's] duties to repair and maintain the common areas, including the roof as well as the structural elements and interior of Unit 10E that were damaged by water incursion within three days of the order"; and (d) awarding plaintiff $25,000 "to cover the relocation, temporary housing costs and storage fees for the tenant of Unit 10E while the repairs to that unit are made." Plaintiff also sought an award of compensatory damages, treble damages, punitive damages, attorney's fees and disbursements, interest, and costs of suit.

The Chancery court issued an Order to Show Cause (OTSC) returnable July 13, 2018, that required defendants to appear and show cause why the injunctive relief sought by plaintiff should not be granted. On the return date of

A-4039-19

the OTSC, the Chancery court granted injunctive relief, ordering defendants to: (1) submit to plaintiff's counsel the plan of a professional engineer regarding roof repairs; (2) repair and remediate the roof leak of the roof of Unit 10E, and if necessary, replace the roof; (3) submit conclusive evidence of remediations to plaintiff's counsel; (4) have Unit 10E inspected by a licensed contractor and professional engineer and provide a reasonable plan for repair and remediation to plaintiff's counsel; (5) repair and remediate all damage to Unit 10E caused by the water intrusions.

On July 30, 2018, plaintiff requested entry of default against all defendants. On August 1, 2018, the Chancery court ordered that default be entered against defendants for failure to appear and scheduled a proof hearing for September 21, 2018.

On August 22, 2018, the Chancery court conducted a case management conference and ordered: (1) default shall remain in place until further order; (2) the proof hearing was adjourned until the October 23 trial date; (3) paper discovery shall be answered by September 1; (4) plaintiff's expert reports shall be served by September 21, and defendants' expert reports by October 21; (5) fact witness depositions shall be completed by September 23 and expert

A-4039-19

depositions shall be completed by October 18; and (6) the parties shall confer and schedule the inspection of the property by expert witnesses.

On September 14, 2018, the Chancery court granted defendants' informal request to vacate the default entered against the Association over plaintiff's objection. Five days later, the Chancery court transferred the case to the Law Division. The following month, plaintiff's counsel withdrew from representing plaintiff, who proceeded without counsel thereafter.

The trial was adjourned, and the parties engaged in discovery, which was extended five times, ending on February 13, 2020. Plaintiff's motion to further extend discovery was denied.

In June 2019, Yaknow, Williams, and the trustees filed a motion to vacate the default. The motion was granted.

On November 20, 2019, plaintiff filed a motion to enforce litigant's rights. On January 14, 2020, the court granted the motion in part, ordering: (1) "[d]efendants to repair and remediate the leaking into Unit 10E from the roof and other sources, including replacement of the roof"; (2) "[d]efendants to submit conclusive evidence of remediation, including evidence of remediation of the violations concerning Unit 10E noticed in the Jersey City Fire Department's Notice of Violations dated May 22, 2018"; (3) permitting

"inspection of Unit 10E by a licensed contractor and a professional engineer within thirty (30) days"; (4) "[d]efendants to repair and remediate all damage to Unit 10E caused by the incursion of water into the Unit"; and (5) "[d]efendants to provide all known contact information for the owner of Unit 10C and for the owner's insurance carrier." The court denied plaintiff's request for sanctions and to compel service of a defense expert report before the discovery end date.

On November 6, 2019, plaintiff's expert, Morse Associates, submitted its expert report, which was updated in January and February 2020. The report states that "[a]ll of the rooms in Unit 10E have been damaged by the water intrusion," with some rooms worse than others. The report opines that there are at least three or four areas "that have ongoing water intrusion that need to be repaired before repairs to the walls and ceilings are made." It further opined that all damaged areas were caused by the water intrusion, save for the damage to the master bedroom closet, which was caused by a leaking shower in the adjacent apartment.

The report opined that the new roof system installed over the existing membrane was improperly installed and needed to be remediated and inspected on a semi-annual basis by a certified roofing contractor.

7

On February 14, 2020, defendants filed four dispositive motions to: (1) grant summary judgment to the individual trustees; (2) grant summary judgment to Williams; (3) bar plaintiff's expert opinion as a net opinion; and (4) dismiss plaintiff's claims for failure to substantiate her damages. On April 30, 2020, the court granted each motion, issuing four orders and a comprehensive eighteen-page memorandum of decision.

First, the court found summary judgment should be granted in favor of the individual trustees. The court noted that the liability of the trustees is governed by the Business Judgment Rule (BJR), which limits liability to proven fraud, self-dealing, or unconscionable behavior. The court found plaintiff did not present any evidence of such conduct. The court explained:

> Plaintiff argues that the mere fact that her Unit has suffered water damage is prima facie evidence that the Board abused its authority, meriting piercing the corporate veil and holding the individual members personally liable. The court disagrees. Though negligence by the condominium association may be a question of fact for the jury, the individual board members may be liable only upon a showing of fraud, self-dealing, or unconscionable behavior, which are questions of law reserved for the court. See Paplexiou v. Tower W. Condo., 167 N.J. Super. 516, 527 (Ch. Div. 1979). The BJR presents a lenient standard of conduct: a board need only have acted reasonably in exercising its business judgment. There is no evidence that the Board members engaged in fraud, self-dealing, or unconscionable conduct. The Affidavit of Stephen

M. Lattanzio, P.E., asserts that a roof membrane does not qualify as roof replacement under the 2018 International Building Code Section 1511.3 and states that prior expert reports commissioned by [d]efendants in 2000, 2007, and 2014 opine that the roof required replacement and maintenance of the drainage system, to be initiated in 2015. He also states that [d]efendants did not provide any evidence supporting their decision to install the membrane instead of replacing the roof according to the 2018 International Building Code; that they have not provided any evidence of the standard of care prescribed publications of the National Roofing Contractors' Association in maintaining and repairing the roof and drainage system or its masonry; and that [d]efendants have not provided any evidence of remedial measures taken other than installing the roof membrane. Though this court also expressed doubt in its Addendum to Order dated January 14, 2020 concerning the adequacy of the Nu-Tek membrane as a long-term remedy and enforced the Chancery Division's order directing [d]efendants to replace the roof, it is [p]laintiff's burden to show that Defendants violated the BJR, not [d]efendants' burden to show compliance. At best, [d]efendants' use of the Nu-Tek membrane and other actions taken by the Board could be considered a practical business judgment and at worst, bad judgment. But courts will not second-guess the actions of directors unless it appears that they are the result of fraud, dishonesty or incompetence," [Paplexiou, 167 N.J. Super. at 527,] and "[b]ad judgment, without bad faith, does not ordinarily make officers individually liable." Alloco v. Ocean Beach & Bay Club, 456 N.J. Super. 124, 140 (App. Div. 2018) (quoting Maul v. Kirkman, 270 N.J. Super. 596, 614 (App. Div. 1994)). The court therefore does not find that [d]efendants' actions warrant piercing the corporate veil . . . .

9

As for Williams, the court found that plaintiff proffered no evidence of fraudulent conduct by Williams that would warrant piercing the corporate veil to impose liability against Williams personally.

> Plaintiff's bare assertion that Mr. Williams owed an affirmative duty above and beyond his capacity as an employee of Yaknow Management because he was responsible for reporting issues on the property concerning the common elements is insufficient to support piercing the corporate veil. The [Association] had a contract with Yaknow Management, LLC, not with Mr. Williams individually. The law of this State is clear that, short of a showing of fraudulent conduct, the corporate veil shall not be pierced to hold an individual member of an LLC liable for the company's actions.

Next, the court found plaintiff's expert report by Morse Associates was admissible "regarding the causes of water damage to [p]laintiff's unit," but an inadmissible net opinion regarding estimated damages. The court stated that while "[a]n injured party may seek actual damages . . . 'that are real and substantial as opposed to speculative[,]' [d]amages must be proven with reasonable certainty." (Citations omitted). The court explained:

> Here, the court finds that [p]laintiff's expert report constitutes an inadmissible net opinion with respect to [p]laintiff's damages. . . . As the report is based on numerous prior expert reports and other sources, including the manufacturer's manual for the roof membrane and site inspections by Morse Associates, the court finds that the report's conclusions

10

regarding the causes of water damage to [p]laintiff's unit do not constitute an inadmissible net opinion.

The damages estimate section of the Morse report consists of quotes from three different contractors listing the cost of services each would perform, the sum of which was either $74,215.18 or $82,715.18, depending on modifications to the work performed. A painting company provided a description of the work to be performed which was estimated to cost $19,688.31 or $28,188.31 if [p]laintiff also had work performed on her kitchen cabinets. A plaster repair company listed the work to be performed at an estimated cost of $16,526.87. And a construction company estimated that the cost of repair to the ceiling, walls, and water damage would be $38,000. Morse Associates provided each contractor with a scope of work and notes in its report that it intended to amend the report once it received documents related to roofing bids, which it apparently never received. It is unclear whether the other estimates are based on photos or verbal or written representations of the unit's condition provided by Morse Associates. It is also unclear if these numbers represent an average cost or are industry outliers, and no unit or labor costs were included. The court therefore finds that these unsubstantiated estimates constitute an inadmissible net opinion.

Finally, the court found plaintiff failed to substantiate her alleged damages. The court reasoned:

[Plaintiff] seeks as damages, inter alia, attorney's fees incurred prior to becoming self-represented, court filing fees, the cost of conducting or attending depositions, fact witness research, international travel, expert fees, unpaid rent which she would have received from [her tenant], childcare, and credit card interest

11

charges. Plaintiff also anticipates damages for having to hire an electrician to investigate and repair any corroded circuitry. She also listed mediation and international tax planning fees as prospective, presently uncalculated costs and seeks pre-and-post judgment interest and treble and punitive damages. Plaintiff did not attach invoices from her attorney prior to becoming self-represented; nor did she include receipts for her other itemized expenses. Plaintiff stated in her opposition papers that documentation substantiating her damages would be provided when discovery was over, that is, when [d]efendants served their outstanding discovery. But, as noted above, discovery has been five times in this case, the discovery end date has passed, and the Presiding Judge of the Civil Division denied [p]laintiff's latest motion to extend discovery.

. . . .

The transcript of the hearing for injunctive relief before [the Chancery judge] indicates that the [d]efendants and the [c]ourt agreed that the roof required repair and that plaintiff had been injured. But if [p]laintiff is unable to substantiate her damages so that a jury can ascertain the actual extent of her injury, then she is necessarily precluded from obtaining relief despite the injunction issued by the Chancery court.

The court granted the dispositive motions and dismissed plaintiff's complaint with prejudice but did not preclude plaintiff from seeking further relief in Chancery.

A-4039-19

Plaintiff moved for reconsideration and clarification of the order barring plaintiff's expert. On June 12, 2020, the court issued an oral decision and accompanying order denying the motion. This appeal followed.

Plaintiff raises the following points for our consideration:

POINT I

THE COURT ABUSED ITS DISCRETION BY GRANTING SUMMARY JUDGMENT IN FAVOR OF INDIVIDUAL TRUSTEES AND BUILDING MANAGER WILLIAMS BECAUSE DEFENDANTS BREACHED THEIR DUTY OF CARE, COVENANT AND FIDUCIARY DUTY TO PLAINTIFF AS AN ASSOCIATION MEMBER AND INVESTMENT PROPERTY OWNER.

POINT II

IN MATTERS OF PUBLIC HEALTH AND SAFETY, THE COURT ERRED BY CONCLUDING TRUSTEES' ACTIONS MUST BE GOVERNED BY THE BUSINESS JUDGMENT RULE ("BJR")[,] FAILED TO APPLY THE REASONABLENESS STANDARD AND IGNORED THAT TRUSTEES ACTED REPEATEDLY IN A PALPABLY UNREASONABLE MANNER.

POINT III

THE COURT ABUSED ITS DISCRETION BY GRANTING DEFENDANTS' MOTION TO BAR PLAINTIFF'S EXPERT REPORT AND MOTION FOR SUMMARY JUDGMENT, ESSENTIALLY DISMISSING PLAINTIFF'S CASE FOR FAILURE TO SUBSTANTIATE DAMAGES.

<u>POINT IV</u>

THE COURT ABUSED ITS DISCRETION BY DENYING PLAINITFF'S MOTION FOR RECONSIDERATION OF THE ORDERS DATED APRIL 30, 2020.

We find no merit in any of these arguments and affirm each of the dispositive orders entered in favor of defendants and the denial of reconsideration.

We apply the same standard as the trial court in our review of summary judgment determinations. <u>Lee v. Brown</u>, 232 N.J. 114, 126 (2018). "Summary judgment is appropriate 'when no genuine issue of material fact is at issue and the moving party is entitled to a judgment as a matter of law.'" <u>Ibid.</u> (quoting <u>Steinberg v. Sahara Sam's Oasis, LLC</u>, 226 N.J. 344, 366 (2016)). We conduct a de novo review of the court's determination of legal issues, <u>Ross v. Lowitz</u>, 222 N.J. 494, 504 (2015), and "its 'application of legal principles to such factual findings.'" <u>Lee</u>, 232 N.J. at 127 (quoting <u>State v. Nantambu</u>, 221 N.J. 390, 404 (2015)).

Under <u>Rule</u> 4:46-2(c), summary judgment is granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact

challenged and that the moving party is entitled to a judgment or order as a matter of law." In applying the standard to our review of a summary judgment determination, we "must view the facts in the light most favorable to the non-moving party." Bauer v. Nesbitt, 198 N.J. 601, 604 n.1 (2009); see also Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

We first address the principles of liability that apply to trustees of a condominium association. Plaintiff named five trustees of the Association as defendants. The law is well-settled that the business judgment rule applies condominium associations and their trustees.

> The business judgment rule applies to 'common interest communities' such as the Club. Comm. for a Better Twin Rivers v. Twin Rivers Homeowners' Ass'n, 192 N.J. 344, 369 (2007). Courts have "uniformly invoked the business judgment rule in cases involving homeowners' associations," because "a homeowners' association's governing body has 'a fiduciary relationship to the unit owners, comparable to the obligation that a board of directors of a corporation owes to its stockholders.'" Ibid. (quoting Siller v. Hartz Mountain Assocs., 93 N.J. 370, 382 (1983)). Similarly, "decisions made by a condominium association board should be reviewed by a court using the same business judgment rule which governs the decisions made by other types of corporate directors." Walker v. Briarwood Condo. Ass'n, 274 N.J. Super. 422, 426 (App. Div. 1994).
>
> [Alloco v. Ocean Beach & Bay Club, 456 N.J. Super. 124, 134-35 (App. Div. 2018).]

As our Supreme Court has explained:

> The business judgment rule has its roots in corporate law as a means of shielding internal business decisions from second-guessing by the courts. Under the rule, when business judgments are made in good faith based on reasonable business knowledge, the decision makers are immune from liability from actions brought by others who have an interest in the business entity. The business judgment rule generally asks (1) whether the actions were authorized by statute or by charter, and if so, (2) whether the action is fraudulent, self-dealing or unconscionable.
>
> [Seidman v. Clifton Sav. Bank, S.L.A., 205 N.J. 150, 175 (2011) (quoting Green Party v. Hartz Mountain Indus., 164 N.J. 127, 147-48 (2000)).]

To "promote and protect the full and free exercise of the power of management given to the directors," the second prong of the business judgment rule "protects a board of directors from being questioned or second-guessed on conduct of corporate affairs, except in instances of fraud, self-dealing, or unconscionable conduct." In re PSE&G S'holder Litig., 173 N.J. 258, 276-77 (2002) (quoting Maul v. Kirkman, 270 N.J. Super. 596, 614 (App. Div. 1994)). This principle applies with equal force to the trustees of a homeowner's association. Siller, 93 N.J. at 382.

16

"The business judgment rule creates 'a rebuttable presumption' that the actions of a Board are valid."  Alloco, 456 N.J. Super. at 136 (quoting PSE&G S'holder Litig., 173 N.J. at 277).

> It places an initial burden on the person who challenges a corporate decision to demonstrate the decision-maker's "self-dealing or other disabling factor." If a challenger sustains that initial burden, then the "presumption of the rule is rebutted, and the burden of proof shifts to the defendant or defendants to show that the transaction was, in fact, fair to the corporation."
>
> [Ibid. (quoting PSE&G S'holder Litig., 173 N.J. at 277) (citations omitted).]

The evidence proffered by plaintiff was insufficient to rebut the presumption of validity and satisfy her initial burden of showing the Trustees' actions were fraudulent, self-dealing, or unconscionable.  Plaintiff points to no facts to establish the trustees engaged in fraud, self-dealing, or unconscionable conduct.  Indeed, plaintiff did not claim fraud or unconscionability and did not allege a cause of action under the Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -20.  Instead, plaintiff simply refers to bad faith and bad judgment without specifying the underlying facts supported by citations to the record.

Nor does the record support any claim that the Association or its trustees engaged in self-dealing or unconscionable conduct.  Upon learning in February 2018 of water infiltration into Unit 10E, the Association had the roof inspected.

A-4039-19

Based on the results of that inspection, the Association had an aluminum roof coating installed above the leaking area of the roof in March 2018. The Association then retained Fania Roofing, who found two cuts in the roof and a blister in the membrane in the area that was leaking. Fania Roofing treated the blister and repaired the cuts. Fania Roofing subsequently determined that the roof needed to be replaced. The Association retained Frank Pelligrino to produce drawings and specifications for the roof replacement. It then solicited three bids for the job and hired Nu-Tek Roofing Systems, Inc. to replace the roof. In the February 2020 update to the report of Morse Associates, plaintiff's own expert acknowledged that the new roof would continue to have "watertight integrity" with regular inspections by a certified roofing contractor. "[T]he business judgment rule does not require [the trustees] to be construction experts." Alloco, 456 N.J. Super. at 141.

A condominium association "is a representative body that acts on behalf of the unit owners. Its powers derive from its by-laws, the master deed, and applicable statutory provisions." Thanasoulis v. Winston Towers 200 Ass'n, 110 N.J. 650, 656 (1988). "The most significant responsibility of a condominium association is the management and maintenance of the common areas of the condominium complex." Id. at 656-57; see also N.J.S.A. 46:8B-12 ("The

18

association . . . is responsible for the administration and management of the condominium and condominium property . . . ."). "The [A]ssociation, <u>acting through its officers or governing board</u>, shall be responsible for the performance" of certain duties, including "[t]he maintenance, repair, replacement, cleaning and sanitation of the common elements." N.J.S.A. 46:8B-14(a) (emphasis added). "Whether or not incorporated, the association shall be an entity <u>which shall act through its officers</u> and may enter into contracts, bring suit and be sued." N.J.S.A. 46:8B-15(a) (emphasis added).

Regarding maintenance and repair, the Association acts through its Board of Trustees. N.J.S.A. 46:8B-14. Our courts have "uniformly invoked the business judgment rule in cases involving homeowners' associations." <u>Twin Rivers</u>, 192 N.J. at 369. This is because "a homeowners' association 'has a fiduciary relationship to the unit owners, comparable to the obligation that a board of directors of a corporation owes to its stockholders.'" <u>Ibid.</u> (quoting <u>Siller</u>, 93 N.J. at 382). "Similarly, 'decisions made by a condominium association board should be reviewed by a court using the same business judgment rule which governs the decisions made by other types of corporate directors.'" <u>Alloco</u>, 456 N.J. Super. at 134-35 (quoting <u>Walker v. Briarwood Condo. Ass'n</u>, 274 N.J. Super. 422, 426 (App. Div. 1994)).

19

Defendants Aragona, Bowman, Campbell, Levin, and Martin were sued in their official capacity as trustees of the Association. Noticeably absent from the complaint is any allegation that the named trustees are liable to plaintiff in for actions or omissions in their individual capacity. Therefore, for the same reasons that the trustees are not liable under the business judgment rule, the Association is likewise not liable. Id. at 134-41 (affirming the grant of summary judgment to a common interest community, which was a not-for-profit corporation, because the decision-making of the members of its Board of Directors was protected under the business judgment rule).

For these reasons, summary judgment was properly granted to the Association and its trustees.

We next address the principles governing liability of the managing member of a limited liability company (LLC). Yaknow is an LLC registered to do business in New Jersey. Beginning in June 2012, the Association retained Yaknow to serve as the building manager for The Hague Building. Yaknow oversaw the day-to-day operation of the Association and the building complex.

Williams is the managing member of Yaknow. Although Williams signed the agreement for management services on behalf of Yaknow, Williams had no independent contractual relationship with the Association. Absent personally

A-4039-19

engaging in fraudulent conduct, a member of an LLC is not personally liable for the debts, obligations, or liabilities of an LLC. N.J.S.A. 42:2C-30(a)(2). There is no evidence in the record that Williams engaged in such conduct. Plaintiff bore the burden of proving that the corporate form should be disregarded by piercing the corporate veil. Richard A. Pulaski Constr. Co. v. Air Frame Hangers, Inc., 195 N.J. 457, 472 (2008). She did not satisfy that burden. Accordingly, summary judgment was properly granted to Williams.

The trial court barred the damages estimate section of plaintiff's expert report and testimony as a net opinion. We review evidentiary decisions "under the abuse of discretion standard because . . . the decision to admit or exclude evidence is one firmly entrusted to the trial court's discretion." Rodriguez v. Wal-Mart Stores, 237 N.J. 36, 57 (2019) (quoting Est. of Hanges v. Metro. Prop. & Cas. Ins. Co., 202 N.J. 369, 383-84 (2010)). "Thus, we will reverse an evidentiary ruling only if it 'was so wide off the mark that a manifest denial of justice resulted.'" Griffin v. City of E. Orange, 225 N.J. 400, 413 (2016) (quoting Green v. N.J. Mfrs. Ins. Co., 160 N.J. 480, 492 (1999)).

The admissibility of expert opinion is guided by N.J.R.E. 702 and 703 and the net opinion rule. N.J.R.E. 702 provides: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or

21

to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise."  In turn, N.J.R.E. 703 contemplates that an expert's opinion must be founded on "facts or data."  Hisenaj v. Kuehner, 194 N.J. 6, 24 (2008); accord Biunno, Weissbard & Zegas, Current N.J. Rules of Evidence, cmt. 3 on N.J.R.E. 703 (2021-22).

In Davis v. Brickman Landscaping, Ltd., 219 N.J. 395 (2014), the Court recently elaborated on the parameters of the net opinion rule and the factors to be employed when applying it.

> An expert may not provide an opinion at trial that constitutes "mere net opinion."  Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 372 (2011).  The rule prohibiting net opinions is a corollary of New Jersey Rule of Evidence 703, State v. Townsend, 186 N.J. 473, 494 (2006), which provides that an expert's testimony "may be based on facts or data derived from (1) the expert's personal observations, or (2) evidence admitted at the trial, or (3) data relied upon by the expert which is not necessarily admissible in evidence but which is the type of data normally relied upon by experts in forming opinions on the same subject," Weisbsbard & Zegas, Current N.J. Rules of Evidence, cmt. 1 on N.J.R.E. 703 (2014).  Thus, the net opinion rule can be considered a "restatement of the established rule that an expert's bare conclusions, unsupported by factual evidence, [are] inadmissible."  Buckelew [v. Grossbard, 87 N.J. 512, 524 (1981)].

The net opinion rule "requires that the expert 'give the why and wherefore' that supports the opinion, 'rather than a mere conclusion.'" Pomerantz Paper Corp., 207 N.J. at 372 (quoting Polzo v. Cnty. of Essex, 196 N.J. 569, 583 (2008)). For example, "a trial court may not rely on expert testimony that lacks an appropriate factual foundation and fails to establish the existence of any standard about which the expert testified." Id. at 373. Therefore, an expert offers an inadmissible net opinion if he or she "cannot offer objective support for his or her opinions, but testifies only to a view about a standard that is 'personal.'" Ibid.

[Id. at 410.]

"Expert testimony should not be received if it appears the witness is not in possession of such facts as will enable him to express a reasonably accurate conclusion as distinguished from a mere guess or conjecture." Vuocolo v. Diamond Shamrock Chems. Co., 240 N.J. Super. 289, 299 (App. Div. 1990). An expert opinion on the quantum of estimated damages that is not based on "supporting data or facts" is an inadmissible net opinion. Brach, Eichler, Rosenberg & Gladstone, P.C. v. Ezekwo, 345 N.J. Super. 1, 11 (App. Div. 2001).

Here, the trial court found that damage estimates contained in the Morse Associates report were an unsubstantiated net opinion. The court observed:

Morse Associates provided each contractor with a scope of work and notes in its report that it intended to amend the report once it received documents related to roofing bids, which it apparently never received. It is unclear whether the other estimates are based on photos

23

or verbal or written representations of the unit's condition provided by Morse Associates. It is also unclear if these numbers represent an average cost or are industry outliers, and no unit or labor costs were included.

We agree. The damage estimates were not supported by adequate facts or other data and were thereby inadmissible net opinions. We discern no abuse of discretion in barring the damage estimates.

The trial court dismissed all of plaintiff's claims with prejudice, finding she failed to substantiate the damages she allegedly incurred and projected. We agree. "It is fundamental that a plaintiff must 'prove damages with such certainty as the nature of the case may permit, laying a foundation which will enable the trier of the facts to make a fair and reasonable estimate.'" Kelly v. Berlin, 300 N.J. Super. 256, 268 (App. Div. 1997) (quoting Lane v. Oil Delivery, Inc., 216 N.J. Super. 423, 420 (App. Div. 1987)). "Conjecture and speculation cannot be used as a basis for damages." Brach, Eichler, 345 N.J. Super. at 11 (citing Lesniak v. Cnty. of Bergen, 117 N.J. 12, 21 (1989)). "Thus, in general, '[a] jury should not be allowed to speculate without the aid of expert testimony in an area where laypersons could not be expected to have sufficient knowledge or experience.'" Kelly, 300 N.J. Super. at 268 (quoting Biunno, Current N.J. Rules of Evidence, cmt. 2 on N.J.R.E. 702 (1996-97)).

Here, the cost of remedying the damages caused by the water infiltration is beyond the knowledge and experience of the average juror. Without expert testimony, the jury would be left to speculate as to the costs of repair. Expert testimony was necessary to determine the quantum of damages incurred by plaintiff as a result of the water infiltration. Absent admissible expert testimony, plaintiff cannot adequately prove the damages she suffered.

Notably, the damage claims included attorney's fees, the cost of conducting or attending depositions, fact witness research, international travel, expert fees, unpaid rent which she would have received, childcare expenses, and credit card interest charges. Plaintiff projected the expense of hiring an electrician to investigate and repair any corroded circuitry. She also listed mediation and international tax planning fees as prospective, presently uncalculated costs and sought pre-and-post judgment interest, treble damages, and punitive damages.

Plaintiff did not substantiate those expenses. As noted by the trial court, "[p]laintiff did not attach invoices from her attorney prior to becoming self-represented; nor did she include receipts for her other itemized expenses." Instead, her opposing papers stated that documentation substantiating her damages would be provided when discovery was concluded. However, as

further noted by the trial court, "discovery ha[d] been extended five times in this case, the discovery end date ha[d] passed," and the Presiding Judge denied plaintiff's motion to reopen and extend discovery. Plaintiff did not appeal that order.

Now, on appeal, plaintiff has submitted voluminous additional documents that are not part of the motion record. "[A]ppellate courts will not ordinarily consider evidentiary material which is not in the record below by way of adduced proof, judicially noticeable facts, stipulation, admission or a recorded proffer of excluded evidence." Pressler & Verniero, Current N.J. Court Rules, cmt. 1 on R. 2:5-4(a) (2022); see also Townsend v. Pierre, 221 N.J. 36, 45 n.2 (2015) ("We do not consider other deposition testimony that was not presented to the trial court and that was submitted by the parties for the first time on appeal."); Tremonte v. Jersey Plastic Molders, Inc., 190 N.J. Super. 597, 601 n.1 (App. Div. 1983) (noting that in the absence of a motion to supplement the record, submission of a document that was not part of the record below "was a gross violation of appellate practices and rules"). Plaintiff was not granted leave to expand the record. We decline to consider these documents that were not presented to the trial court.

More fundamentally, several aspects of the damages sought by plaintiff are not recoverable. "New Jersey courts historically follow the 'American Rule,' which provides that litigants must bear the cost of their own attorneys' fees . . . except[] in eight enumerated circumstances." Innes v. Marzano-Lesnevich, 224 N.J. 584, 592 (2016) (citations omitted). Attorney's fees are not recoverable except when authorized by statute, court rule, or contract. Id. at 593 (citing In re Est. of Vayda, 184 N.J. 115, 121 (2005)); R. 4:42-9(a). No such basis is present in this case. Similarly, deposition costs are not ordinarily recoverable as part of the taxed costs. Smith v. Jersey Cent. Power & Light Co., 421 N.J. Super. 374, 388 (App. Div. 2011). Likewise, expert fees are not ordinarily recoverable as part of the taxed costs. Buccinna v. Micheletti, 311 N.J. Super. 557, 565-66 (App. Div. 1998). Expenses incurred for international travel and fact witness research are also not recoverable as part of the taxed costs.

Finally, we address plaintiff's challenge of the denial of her motion for reconsideration. For the reasons we have already expressed, defendant's argument lacks sufficient merit to warrant extended discussion. R. 2:11-3(e)(1)(E).

Reconsideration is appropriate when the movant demonstrates that the court overlooked material facts in the record or erred by ignoring or misapplying

to controlling decisions.  R. 4:49-2.  "The rule applies when the court's decision represents a clear abuse of discretion based on plainly incorrect reasoning or failure to consider evidence or a good reason for the court to consider new information."  Pressler & Verniero, cmt. 2 on R. 4:49-2 (citing Kornbleuth v. Westover, 241 N.J. 289, 301-02 (2020)).  Motions for reconsideration are addressed to the motion judge's sound discretion.  Hinton v. Meyers, 416 N.J. Super. 141, 148 (App. Div. 2010).  We review the denial of a motion for reconsideration for clear abuse of discretion.  Pitney Bowes Bank v. ABC Caging Fulfillment, 440 N.J. Super. 378, 382 (App. Div. 2015).  We discern no such abuse of discretion.  Plaintiff has not demonstrated that the grant of summary judgment to defendants, barring of plaintiff's expert, and dismissal of the complaint was based on plainly incorrect reasoning or that the court overlooked relevant evidence or controlling decisions that compel a different outcome.  See Cummings v. Bahr, 295 N.J. Super. 374, 384-85 (App. Div. 1986).

Any issues raised but not otherwise addressed were found to lack sufficient merit to warrant discussion in our opinion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4039-19