**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4301-19

RUFINA ASOLUKA UNEZE,

    Plaintiff-Appellant,

v.

GREYSTONE PARK
PSYCHIATRIC HOSPITAL,
STATE OF NEW JERSEY,
MARY JO KURTIAK, MOISE
YOMB, and MR. SUNDAY,

    Defendants-Respondents.

_____

        Submitted February 9, 2022 – Decided March 11, 2022

        Before Judges Hoffman and Geiger.

        On appeal from the Superior Court of New Jersey, Law Division, Morris County, Docket No. L-2760-17.

        Eldridge Hawkins, attorney for appellant.

        Andrew J. Bruck, Acting Attorney General, attorney for respondents (Sookie Bae-Park, Assistant Attorney General, of counsel; Eric Intriago, Deputy Attorney General, on the brief).

PER CURIAM

Plaintiff Rufina Asoluka Uneze appeals from a Law Division order granting summary judgment to remaining defendants Greystone Park Psychiatric Hospital (Greystone) and the State of New Jersey.

We glean the following facts from the record. Plaintiff is a Registered Nurse who was employed at Greystone as a charge nurse. At around 7:10 a.m. on February 9, 2016, T.S., an adult male patient in a wheelchair reached out and touched or grabbed plaintiff's buttocks without her consent. Plaintiff reacted by first removing the patient's hands from her person, turning around, raising her right hand above her head, and striking the patient on the left shoulder, then forcefully pushing the patient's wheelchair away from her. Plaintiff denied intentionally hitting the patient. The incident was captured on surveillance video and witnessed by Greystone's CEO, Mary Jo Kurtiak, and Moise Yomb, a nurse. Kurtiak immediately escorted plaintiff off the unit.

Department of Human Services (DHS) Administrative Order 4:08 states

> Physical abuse is a physical act directed at a client, patient or resident of a type that could tend to cause pain, injury, anguish, and/or suffering. Such acts include but are not limited to the client, patient, or resident being kicked, pinched, bitten, punched, slapped, hit, pushed, dragged, and/or struck with a thrown or held object.

The administrative regulations governing Greystone employees provide that any employee who physically abuses a patient by striking, hitting, punching, or slapping a patient is subject to termination. Plaintiff received training on this policy and was aware that hitting a patient would result in termination. Plaintiff acknowledges that the regulations do not provide for a lesser disciplinary sanction for hitting a patient.

As a result of the incident, plaintiff was initially suspended with pay. The incident was promptly investigated by Greystone Quality Assurance Specialist Cornelius Doyle, who spoke with plaintiff, the patient, Kurtiak, and Yomb, and prepared an Unusual Incident Report. The report substantiated physical abuse of patient T.S. and noted that while plaintiff denied hitting the patient, video evidence contradicted her denial.

One week later, plaintiff was served with a Preliminary Notice of Disciplinary Action (PNDA) charging her with violating two subsections of DHS Administrative Order 4:08: (C3) physical abuse of a patient, and (C5) inappropriate physical contact or mistreatment of a patient. It also charged her with conduct unbecoming a public employee, N.J.A.C. 4A:2-2.3(a)(6), and other sufficient cause, N.J.A.C. 4A:2-2.3(a)(12). The PNDA specified:

> On February 9, 2016, at 7:11 [a.m.], Unit G1, you physically abused patient T.S., who [was] in a

wheelchair by hitting him on the left shoulder and pushing him away in his wheelchair. This behavior is unacceptable and furthermore constitutes mistreatment of a patient and conduct unbecoming a public employee.

Greystone sought to remove plaintiff. Following a Loudermill[1] hearing on July 25, 2016, plaintiff was suspended without pay.

A departmental hearing was conducted on July 25, 2016. Plaintiff was represented at the hearing by a union Executive Vice-President. Plaintiff testified that she was aware that striking a patient would result in termination, and that there was a written policy stating this. Plaintiff was trained by Greystone not to hit a patient. Plaintiff understood that if a supervisor believed she physically abused a patient, she could be terminated and she believed that would be appropriate. Plaintiff acknowledged that even if a Greystone patient grabbed an employee's buttocks, the employee is not allowed to hit the patient.

---

[1] Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532 (1985). A Loudermill hearing is part of the due process afforded public employees by providing the employee with an opportunity to hear and respond to the disciplinary charges, and to refute any conclusions reached by the employer, prior to termination or suspension without pay. See Caldwell v. N.J. Dep't of Corr., 250 N.J. Super. 592, 613 (App. Div. 1991) (quoting Loudermill, 470 U.S. at 546) (explaining that "where a public employee has a constitutionally protectible property interest in continued employment, that employee may not be terminated without first being provided with the 'opportunity to present reasons, either in person or in writing, why proposed action should not be taken. . . .'").

A-4301-19

Plaintiff stated: "If a patient attack[s] you, there is a response you should follow, which tell[s] you to walk away. Call for help."

Plaintiff denied intentionally hitting the patient, describing it as a reflex action. She claimed she swatted the patient's hand backward to push it away.

In his written decision, the hearing officer found that after patient T.S. grabbed plaintiff from behind, plaintiff turned around, raised her hand, hit the patient with a back-handed slap on the left shoulder, and then pushed his wheelchair away from her. The hearing officer further found that the incident was recorded on surveillance video and Kurtiak witnessed plaintiff hit the patient and push his wheelchair away. The hearing officer noted that "DHS Administrative Order 4:08 specifies a penalty of [r]emoval for a first infraction of physical abuse." The hearing officer sustained each of the disciplinary charges and found removal was appropriate.

Plaintiff was then served with an August 5, 2016, Final Notice of Major Disciplinary Action (FNDA), removing her from employment effective February 17, 2016. Plaintiff did not appeal her removal to the Civil Service Commission. Instead, she filed this action.

On December 28, 2017, plaintiff filed a complaint against defendants Greystone, the State, Mary Jo Kurtiak, Moise Yomb (Greystone employee), and

Omoloyin Sunday (Greystone employee). Plaintiff pleaded the following causes of action: sexual harassment and retaliation in violation of the New Jersey Law Against Discrimination (NJLAD), N.J.S.A. 10:5-1 to -50 (count one); interference with beneficial economic interest, breach of implied covenant of good faith and fair dealing, and violation of the New Jersey Constitution (count two); violation of the New Jersey Civil Rights Act (NJCRA), N.J.S.A. 10:6-1 to -2 (count three); libel, slander per se, and violation of substantive due process and the right to free speech under the New Jersey Constitution (count four); and misuse and abuse of process (count five).

Plaintiff alleged that Greystone filed a petition against her with the New Jersey Board of Nursing, alleging that she physically abused a patient, mistreated a patient, and engaged in conduct unbecoming a public employee, among other allegations, seeking to have plaintiff's nursing license suspended. Plaintiff also alleged that defendant denied her adequate preparation for the disciplinary proceedings, violated an implied contractual right, brought false charges and misused the disciplinary process, discriminated against her based on her sex, race, sickle cell trait (SCT), and Nigerian tribal affiliation, and retaliated against her for her complaints about patient care.

6

Plaintiff's claims against individual defendants Kurtiak, Yomb, and Sunday were administratively dismissed without prejudice for lack of prosecution. Plaintiff did not move to reinstate those claims. The discovery end date was December 22, 2019.

On January 21, 2020, defendants Greystone and the State moved for summary judgment. Defendants argued they were entitled to summary judgment because: (1) they are not "persons" under N.J.S.A. 10:6-2(c) of NJCRA; (2) they are immune from liability for intentional torts under the New Jersey Tort Claims Act, N.J.S.A. 59:1-1 to 12-3; (3) the implied covenant claims were barred under the New Jersey Contractual Liability Act, N.J.S.A. 59:13-1; (4) the defamation claims were time-barred by applicable statutes of limitations; (5) there was no evidence of retaliation or failure to accommodate under the NJLAD; and (6) plaintiff did not establish racial, disability, and tribal affiliation discrimination.

After reviewing the motion record, viewing the video of the incident, and considering the submissions of the parties, the trial court issued an April 27, 2020 order and thirty-three-page written decision that granted summary judgment dismissing all claims against Greystone and the State. The judge found the following facts "[were] not rationally or reasonably disputable." Plaintiff "hit or slap[ped] the patient on his left shoulder area." Greystone's

7 <span>A-4301-19</span>

administrative regulations "communicate clearly that an employee who hits, strikes, punches, or slaps a patient is subject to termination." "The only disciplinary remedy is termination." "Plaintiff had received extensive training in dealing and interacting with patients . . . and . . . she was fully aware that the disciplinary penalty for striking or slapping a patient is termination, and that such conduct is not permitted or tolerated." Kurtiak observed plaintiff raise her hand and hit the patient. Kurtiak pulled plaintiff off the unit, initiated an investigation, and had plaintiff surrender her access pass and keys.

The judge noted that the surveillance video showed the patient touching or grabbing plaintiff's buttock area with one hand. "Obviously alarmed by this, [plaintiff] swiveled, pushed the patient's hand away, raised her arm in the air, and brought her hand down quickly hitting or slapping the patient on his left shoulder area one time, and [gave] the wheelchair a push." The judge rejected plaintiff's claim that she did not make physical contact with the patient and merely hit the back of the wheelchair.

This appeal followed. Plaintiff raises the following points:

> I. THE COURT ERRED IN HOLDING THAT DEFENDANT GREYSTONE PARK PSYCHIATRIC HOPSITAL IS PROTECTED BY SOVEREIGN IMMUNITY.

8

A. It is Acknowledged that the State (Not the Hospital or the Individual Defendants) Is Immune from Claims Under Common Law for Intentional Torts. Same Does Not Protect the State, the Hospital or Individual Defendants from Constitutional and Statutory Causes of Action. See Fuchilla v. Layman, 109 N.J. 319 [(1988).] Misuse and Abuse of Process is a Viable Cause of Action.

II. THE COURT ERRED IN HOLDING THAT DEFENDANT SUNDAY AND DEFENDANT KURTIAK ACTED WITHIN THE BOUNDS OF THEIR AUTHORITY IN TERMINATING THE PLAINTIFF.

III. THE COURT ERRED IN HOLDING THAT THE PLAINTIFF PROVIDED NO LEGAL AUTHORITY OR FACTUAL BASIS AS TO WHY THE DEFENDANTS' ACTIONS SHOULD BE VIEWED AS RETALIATION INSTEAD OF A DISCIPLINARY ACTION.

A. Greystone's Legitimate Business Reason is Contrary to Law, Policy, and Case Law.

B. Plaintiff Has Proven Her Case Under NJLAD.

IV. PLAINTIFF HAS PROVEN A CLAIM OF HOSTILE WORK ENVIRONMENT OF HER COMPLAINTS ABOUT BEING SEXUALLY ASSAULTED AND THE HOSPITAL BEING SHORT STAFFED.

V. THE COURT ERRED IN HOLDING THAT THE PLAINTIFF DID NOT PROVIDE EVIDENCE OF CONDUCT TO SUPPORT AN IIED CLAIM.

9

VI. THE COURT ERRED IN GRANTING SUMMARY JUDGMENT DISMISSING COUNT TWO — BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING AND VIOLATIONS OF NEW JERSEY'S CONSTITUTION — ON SUMMARY JUDGMENT OF THE PLAINTIFF'S COMPLAINT AS PLAINTIFF HAS PROVIDED EVIDENCE FOR HER ALLEGATIONS UNDER COUNT TWO.

    A. Plaintiff[']s Implied Covenant Claim Is Not Barred by the Statute of Contractual Liability Act.

VII. THE COURT ERRED IN GRANTING SUMMARY JUDGMENT DISMISSING COUNT THREE — OFFICIAL DEPRIVATION ON CIVIL RIGHTS[,] N.J.S.A. 10:6-2 — AS PLAINTIFF HAS PLED SUFFICIENT FACTS TO SUGGEST THAT SHE WAS DISCRIMINATED BECAUSE OF HER DISABILITY.

    A. Contrary to Defendant's[] Position[,] Plaintiff Does State Evidence of Sickle Cell Disability Which Disappeared From Her Records.

VIII. THE COURT ERRED IN GRANTING SUMMARY JUDGMENT DISMISSING COUNT FOUR – NJ CONSTITUTION, ARTICLE ONE: DEFAMATION, LIBEL – AS PLAINTIFF HAS PROVIDED FACTS TO ESTABLISH THAT DEFENDANTS MADE FALSE AND DEFAMATORY STATEMENTS.

IX. THE COURT ERRED IN GRANTING SUMMARY JUDGMENT DISMISSING COUNT FIVE – MISUSE AND ABUSE OF PROCESS – AS

PLAINTIFF HAS PROVIDED FACTS IN SUPPORT OF PLAINTIFF'S CAUSE OF ACTION.

> A. Plaintiff Established a Prima Facie Case of Wrongful Termination Based Upon Her Protected Classes of Race, National Origin, Ethnicity, and National Ancestry and Retaliation Under N.J.S.A. 10:5-12 (a), (d), (e).

> B. Defendant[]s Violated N.J.A.C. 4A:2-2.5[,] 4A:2-2.6 and N.J.S.A. 11A:2-13 Which Resulted in Defendants Misusing and Abusing the Civil Service Process to Defendant[']s Detriment.

> C. Defendant[]s Abused and Misused the Civil Service Process to Plaintiff's Detriment.

X. DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON ANYTHING.

XI. THE INDIVIDUAL DEFENDANTS ARE STILL NOT DISMISSED WITH PREJUDICE AND REMAIN AS VIABLE DEFENDANTS UPON REMAND BY THIS COURT BACK TO THE LAW DIVISON FOR TRIAL.

We apply the same standard as the trial court in our review of summary judgment determinations. Lee v. Brown, 232 N.J. 114, 126 (2018). "Summary judgment is appropriate 'when no genuine issue of material fact is at issue and the moving party is entitled to a judgment as a matter of law.'" Ibid. (quoting Steinberg v. Sahara Sam's Oasis, LLC, 226 N.J. 344, 366 (2016)). We conduct a de novo review of the court's determination of legal issues, Ross v. Lowitz,

222 N.J. 494, 504 (2015), and "its 'application of legal principles to such factual findings[.]'" Lee, 232 N.J. at 127 (quoting State v. Nantambu, 221 N.J. 390, 404 (2015)).

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). In applying the standard to our review of a summary judgment determination, we "must view the facts in the light most favorable to the non-moving party, which in this case is plaintiff." Bauer v. Nesbitt, 198 N.J. 601, 604 n.1 (2009) (citing R. 4:46-2(c); Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)).

Having considered the record and applicable legal principles, we affirm the dismissal of plaintiff's claims on summary judgment. Plaintiff's numerous arguments lack sufficient merit to individually warrant extended discussion in a written opinion. R. 2:11-3(e)(1)(E).

In count one, plaintiff alleged Greystone and the State discriminated against her in violation of the NJLAD. Plaintiff claims that the real reason she

was terminated was because of her race, sex, tribal affiliation, sex, national origin and because she has SCT.

"[O]ur courts have adopted the burden-shifting framework articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), to prove disparate treatment under [the NJLAD]." Viscik v. Fowler Equip. Co., 173 N.J. 1, 13-14 (2002).

> Under that framework, a plaintiff must first prove a prima facie case of discrimination. Andersen [v. Exxon Co., U.S.A., 89 N.J. 483, 492 (1982)]. To do so, a plaintiff must show that he or she (1) belongs to a protected class; (2) applied for or held a position for which he or she was objectively qualified; (3) was not hired or was terminated from that position; and that (4) the employer sought to, or did fill the position with a similarly-qualified person. Ibid. The establishment of a prima facie case gives rise to a presumption of discrimination. Id. at 493.
>
> Once that threshold has been met, the burden of going forward shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. Ibid. After the employer does so, the burden shifts back to the plaintiff to show that the employer's proffered reason was merely a pretext for discrimination. Ibid. To prove pretext, however, a plaintiff must do more than simply show that the employer's reason was false; he or she must also demonstrate that the employer was motivated by discriminatory intent. Erickson [v. Marsh & McLennan Co., 117 N.J. 539, 561 (1990)] (holding that an "employee can be fired for a false cause or no cause at all. That firing may be unfair, but it is not illegal").

Thus, under the <u>McDonnell Douglas</u> framework, a plaintiff retains the ultimate burden of persuasion at all times; only the burden of production shifts. <u>Andersen</u>, 89 N.J. at 493.

[<u>Viscik</u>, 173 N.J. at 14.]

As to her claim that she was treated disparately because defendants knew she was afflicted by SCT,[2] the trial court noted that when asked if she believed she was terminated because she had SCT, she responded: "No. Because I do my job." Nor was she aware if Kurtiak knew plaintiff had sickle cell trait. The trial court concluded plaintiff offered no evidence in support of her disability discrimination claim. Plaintiff has not demonstrated any causal link between her SCT and her disciplinary charges and resulting termination. Her claim of disability discrimination was properly dismissed.

As to her claim she was discriminated against because of her sex, plaintiff contended that as a female, she "was entitled not to be sexually harassed and 'felt up' by a male patient." She also alleged that her complaint to defendants

---

[2] SCT is not a disease. Center for Disease Control, <u>What You Should Know About Sickle Cell Trait</u>, CDC.ɢᴏᴠ, https://www.cdc.gov/ncbddd/sicklecell/documents/SCD%20factsheet_Sickle%20Cell%20Trait.pdf (last visited Feb. 28, 2022). Unlike the more serious sickle cell disease, SCT generally causes no symptoms. <u>Ibid.</u> Most people with this condition have no direct health consequences due to the disorder and lead a normal life. <u>Ibid.</u>

A-4301-19

about the adverse effect the sexual assault by patient T.S., and defendants' reaction to it, had on her condition, was to no avail as she was "brought up on charges and . . . terminated by [d]efendants for [pre]textual reasons." Plaintiff claims Greystone and its administrators "owed a duty to [p]laintiff to protect her from such actions instead of punishing [p]laintiff for objecting to such actions. Plaintiff alleged defendants breached those duties and wrongfully retaliated against plaintiff by suspending and terminating her.

As to her claim of retaliation due to her complaints to management, plaintiff was unable to establish a prima facie case. Plaintiff alleges that she engaged in protected activity by complaining about understaffing at Greystone and sent a fax to Trenton the day of the incident. She further alleges she engaged in protected activity by complaining to Yomb about a patient not receiving their prescribed medication.

To establish a prima facie claim of retaliation under the NJLAD, plaintiff was required to show: (1) that she engaged in a protected activity; (2) that she was subjected to an adverse employment action; and (3) a causal link between the protected activity and the adverse employment action. Battaglia v. United Parcel Serv., Inc., 214 N.J. 518, 547 (2013) (citing Woods-Pirozzi v. Nabisco Foods, 290 N.J. Super. 252, 274 (App. Div. 1996)). Other than the fact that she

was disciplined for physically abusing and mistreating a patient, plaintiff presented no facts demonstrating a causal link between her termination and her complaints. Nor did she present any documentary evidence of sending a fax about staffing levels on the date of the incident. Her retaliation claim was properly dismissed due to the absence of any evidence of a causal link. As we explained in Young v. Hobart W. Grp.,

> the mere fact than [an] adverse employment action occurs after [the protected activity] will ordinarily be insufficient to satisfy the plaintiff's burden of demonstrating a causal link between the two. Only where the facts of the particular case are so 'unusually suggestive of retaliatory motive' may temporal proximity, on its own, support an inference of causation. Where the timing alone is not 'unusually suggestive,' the plaintiff must set forth other evidence to establish the causal link.
>
> [385 N.J. Super. 448, 467 (App. Div. 2005) (citations omitted).]

Plaintiff's claim she was treated disparately because of her race was based entirely on her subjective belief that Kurtiak treated her differently than she would have treated friends, family members, or peers. When asked to disclose the factual basis for that claim, plaintiff was unable to provide any evidence of a link to her race.

16

As to her claim that she was treated disparately because of her national origin or tribal affiliation, plaintiff offered no evidence that Kurtiak knew of her tribal affiliation. When asked if Sunday treated her differently because of her tribal affiliation, plaintiff responded: "Not really."

Given this lack of evidence that plaintiff was treated differently because of her race or that supervisors even knew of her tribal affiliation, plaintiff failed to satisfy her initial burden. No reasonable jury could find that she was terminated because of race or tribal affiliation. The trial court properly dismissed those claims, noting "[b]are allegations, unsupported speculation and conjecture, without factual support in the record will not sustain a cause of action under the bright light of a motion for summary judgment." Secondly, plaintiff produced no evidence that defendants' reasons for terminating her were pretextual. Plaintiff's physical abuse and mistreatment of patient T.S., which was captured on video, provided a legitimate basis for removal. Nor has plaintiff demonstrated that defendants were motivated by discriminatory intent.

In count two of her complaint, plaintiff alleged defendants' policies, orders, regulations, handbook, and laws "constitute an implied contract and an economic expectation which has been violated in bad faith by defendants . . . ." Plaintiff further contended defendants were subject to an implied covenant of

17

good faith and fair dealing. She alleged that defendants breached the implied contract and covenant and invaded her privacy.

Defendants contended N.J.S.A. 59:13-5 bars "recovery against the State for claims based upon contracts implied in law." In addition, defendants argued that plaintiff failed to file the notice of contract claim within ninety days of the accrual of the claim required by N.J.S.A. 59:13-5. Defendants pointed out that plaintiff only filed a notice of tort claim related to her claims of defamation and wrongful suspension without pay. The trial court determined that plaintiff's claims of breach of implied contract and covenant of good faith and fair dealing were barred under N.J.S.A. 59:13-5. We concur. More fundamentally, plaintiff has not shown that defendants breached the purported implied contract or the covenant of good faith and fair dealing by terminating her for physically abusing a patient by striking him. The termination was in accordance with DHS regulations and policies, undertaken pursuant to established disciplinary procedures that provided adequate due process and a right of appeal, proven by overwhelming evidence, and not pretextual.

In count three, plaintiff alleged deprivation of her civil rights in violation of NJCRA. She claimed that defendants engaged in sexual harassment, handicap discrimination, national origin discrimination, and retaliation compared to

employees outside plaintiff's protected classes, and that this conduct was pursuant to defendants' customs and policies. The trial court dismissed these claims, determining that Greystone and the State are immune because they are not "persons" subject to liability under NJCRA. We agree.

Plaintiff's NJCRA claims against Greystone and the State are barred by sovereign immunity. The Legislature's intent in enacting NJCRA was "to provide New Jersey citizens with a state analogue to Section 1983[3] actions." Perez v. Zagami, LLC, 218 N.J. 202, 215 (2014). "Given their similarity, our courts apply [Section] 1983 immunity doctrines to arising claims under [NJCRA]." Brown v. State, 442 N.J. Super. 406, 425 (App. Div. 2015), rev'd on other grounds, 230 N.J. 84 (2017); see also Gormley v. Wood-El, 218 N.J. 72, 113-15 (2014). Thus, claims under NJCRA are considered in a manner consistent with Section 1983 jurisprudence.

"[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983." Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989). "Likewise, because the State is not a 'person' under the [NJCRA], it is equally immune from suits for damages . . . ." Brown, 442 N.J. Super. at 426. This immunity extends to State agencies and officials acting in their official

---

[3] 42 U.S.C. § 1983.

capacities, because they too are not a "person" within the meaning of NJCRA. C.J. v. Vuinovich, 252 N.J. Super. 122, 131 (App. Div. 1991) (citing Will, 491 U.S. at 60).

State psychiatric hospitals such as Greystone are arms of the State that are immune from liability under NJCRA. See Weisman v. N.J. Dep't of Hum. Servs., 817 F. Supp. 2d 456, 464 (D.N.J. 2010) (holding Ancora State Psychiatric Hospital is not a "person" subject to liability under Section 1983); DEP v. Gloucester Env't Mgmt. Servs., 923 F. Supp. 651, 660 (D.N.J. 1995) (holding Ancora State Psychiatric Hospital is an arm of the State for purposes of sovereign immunity). Indeed, plaintiff's own complaint states that Greystone "is a State agency of [d]efendant State of New Jersey" and "is owned and managed by the State of New Jersey as a governmental entity."

Here, Greystone performs a governmental function. It is not separately incorporated. Greystone is a DHS-operated and managed facility. Its employees are entitled to Civil Service status. Any judgment for damages entered against Greystone would be paid from funds of the State Treasury. Greystone is clearly an arm of the State that is not a "person" within the meaning of Section 1983. Accordingly, plaintiff's claims under NJCRA were properly dismissed.

In count four of her complaint, plaintiff alleged defendants brought "false charges" against her "with the intention of causing [p]laintiff loss of her employment good will, reputation and right to grieve and complain without fear of retaliation." She claimed that the false charges "amounted to defamation per se, libel and slander as [d]efendants knowingly made untrue statements about her professional competency with reckless and wanton disregard for the consequences thereof."

The trial court dismissed these defamation claims as time barred. It also concluded that plaintiff failed to show that defendants made false and defamatory statements about her in a public setting. Defamation claims are subject to the one-year statute of limitations imposed by N.J.S.A. 2A:14-3. "A defamation action must be filed within one year of the publication of an actionable writing or utterance." Petro-Lubricant Testing Labs, Inc. v. Adelman, 233 N.J. 236, 250 (2018). Similarly, "[c]laims for invasion of privacy based on placing plaintiff in a false light are subject to the one-year statute of limitations imposed by N.J.S.A. 2A:14-3." Smith v. Datla, 451 N.J. Super. 82, 94 (App. Div. 2017) (citing Swan v. Boardwalk Regency Corp., 407 N.J. Super. 108, 122-23 (App. Div. 2009)). The disciplinary proceedings against plaintiff were

completed on August 5, 2016.  Plaintiff filed her complaint on December 28, 2017.  Her defamation and false light claims were clearly time-barred.

In count five of her complaint, plaintiff alleged defendants engaged in misuse and abuse of process by bringing disciplinary charges against her to retaliate for complaints that they engaged in unlawful practices.  The trial court found that "[p]laintiff failed to sufficiently plead retaliation or to show that the [d]efendants' legitimate business reason advanced for the [p]laintiff's termination was pretextual."  The court noted that plaintiff was provided with a Loudermill hearing, at which plaintiff was represented and "allowed to plead her case" and argue against termination.  The trial court found plaintiff "failed to offer any evidence" that would establish a prima facie case of abuse or misuse of process.  The court found there was "no evidence that the [p]laintiff was the target of a plan or scheme to terminate her through manipulation or misuse of the hearing process."  The record amply supports those findings.  Count five was properly dismissed.

The plaintiff in a malicious use of process action must prove that the original action complained of was brought without probable cause and was actuated by malice, that it was terminated favorably to the plaintiff, and that plaintiff suffered a special grievance by the institution of the underlying

22

proceeding.  LoBiondo v. Schwartz, 199 N.J. 62, 90 (2009).  Each element must be proven for there to be any recovery.  Ibid.  Absent a dispute as to the material underlying facts, a determination of probable cause is a question of law.  Jobes v. Evangelista, 369 N.J. Super. 384, 398 (App. Div. 2004).  Plaintiff clearly failed to satisfy these elements and was unable to make out a prima facia case.  The record demonstrates that defendants had probable cause to bring the removal proceeding.  In addition, the removal proceeding was not terminated favorably to plaintiff.  For each of these reasons, plaintiff's claim of abuse of process fails.

To state a cause of action for malicious abuse of process, plaintiff must also show that defendants engaged in acts "after issuance of process 'which represent[ed] the perversion or abuse of the legitimate purposes of that process.'"  Baglini v. Lauletta, 338 N.J. Super. 282, 294 (App. Div. 2001) (quoting Penwag Prop. Co. v. Landau, 148 N.J. Super. 493, 499 (App. Div. 1977), aff'd, 76 N.J. 595 (1978)).  Plaintiff must demonstrate that after commencing process, defendants pursued that process for an ulterior motive and used the process as "a means to coerce or oppress[.]"  Tedards v. Auty, 232 N.J. Super. 541, 550 (App. Div. 1989).  Plaintiff has not demonstrated that such misconduct occurred.

Plaintiff was initially suspended with pay. She was served with a PNDA specifying the charges. Plaintiff participated in a <u>Loudermill</u> hearing and was represented by a union official. She was suspended without pay following that hearing. At the subsequent departmental hearing, where plaintiff was represented by a union official and afforded the opportunity to present witnesses and cross-examine Greystone's witness, the disciplinary charges and removal were sustained by the hearing officer. Plaintiff was then served with a FNDA removing her from employment effective February 17, 2016. Plaintiff had the right to appeal her removal to the Civil Service Commission. N.J.A.C. 4A:2-2.8. She did not do so. The record belies any claim plaintiff was denied due process or that Greystone or the State otherwise engaged in malicious abuse of process.

Finally, we address plaintiff's argument that Greystone violated N.J.S.A. 11A:2-13 and N.J.A.C. 4A:2-2.5(d) by not conducting the departmental hearing within thirty days of the issuance of the PNDA. In <u>Goodman v. Dep't of Corrections</u>, the court considered "whether disciplinary charges against a public employee in the career service must be dismissed if the appointing authority fails to conduct a departmental hearing within the thirty-day period required by N.J.S.A. 111:2-13. 367 N.J. Super. 591, 592 (App. Div. 2004). The court held

"that this requirement is not jurisdictional and that the appointing authority may proceed with disciplinary charges even if it fails to conduct a departmental hearing within the statutorily mandated period." Ibid. The court reasoned:

> In the absence of an explicit legislative provision requiring dismissal of disciplinary charges if an appointing authority fails to conduct a department hearing within thirty days, we are unwilling to impute such an intent to the legislature. There is a strong public interest in allowing an appointing authority to proceed with disciplinary charges even if it has failed to conduct a hearing within the legislatively prescribed period.
>
> [Id. at 594.]

Just as in Goodman, "[t]his case illustrates that public interest." Ibid. Moreover, plaintiff has not demonstrated that the delay in the hearing prejudiced him.

To the extent we have not specifically addressed any of plaintiff's remaining arguments, we find them to lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4301-19